THE STATE v. DUNCAN, *Appellant.*

Division Two, February 1, 1898.

1. **Criminal Law**: INSTRUCTIONS: REASONABLE DOUBT. An instruction, set out in full in the opinion, defining reasonable doubt as "a substantial doubt of defendant's guilt, with a view to all the evidence in the case, and not a mere possibility of defendant's innocence," is *held* to be materially different from the instruction condemned in *State v. Blue*, 136 Mo. 41, and to be a good instruction.

2. ———: ———: COMMON ASSAULT. In a trial for assault with intent to kill, where the evidence on the part of the State tends to establish felonious assault, and the defendant's evidence shows an assault made in self-defense, it is not error for the trial court to refuse, at the request of the defendant, an instruction for common assault.

*Appeal from Platte Circuit Court.*—HON. WILLIAM S. HERNDON, Judge.

AFFIRMED.

*John W. Coots* for appellant.

(1) The court erred in the third instruction given on the motion of the State. It does not properly

define reasonable doubt.   It entirely ignores that element of doubt that might arise from the insufficiency of the evidence, and really casts upon defendant the burden of proving his innocence.   *State v. Blue*, 136 Mo. 41, and authorities cited.   And ·as defendant interposes the plea of self-defense, this instruction is doubly obnoxious.·  *State v. Hickman*, 95 Mo. 322. (2) The court erred in refusing defendant's fourth and sixth instructions, defining common assault.   The evidence on the part of defendant showed that he did not use a deadly weapon in the alleged assault on Andrews, but merely a small block of wood or a piece of brick which he threw without any design to inflict more than a battery.   *State v. Fredericks*, 136 Mo. 51;  *State v. Smith*, 37 Mo. App. 137.   (3) The court erred in refusing the fifth instruction asked ˙ by defendant. Under the circumstances of this case, he˙ was entitled to the benefit of this instruction, to remove from the minds of the jury any feeling of prejudice in their minds that might have been engendered by his having attempted to ride on the train without payment of his fare.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

(1)   The record discloses that instructions were given for "assault with intent to kill; with malice aforethought; assault to kill without malice; self-defense, the competency of defendant as a witness; credibility of witness and reasonable doubt."   These instructions cover every element of the case upon which there was testimony to warrant an instruction. *State v. Kelley*, 136 Mo. 18;  *State v. Miller*, 93 Mo. 263. (2) No error was committed by the court in giving the instruction on the question of reasonable doubt.   It

fully conforms to the ruling of this court on the subject. *State v. Nueslein*, 25 Mo. 111; *State v. Bobbst*, 131 Mo. 339. The criticism and comments of this court upon an instruction of this character in the case of *State v. Blue*, 136 Mo. 41, are fully complied' with and satisfied. (3) The court's instruction given on behalf of the State on the question of self-defense is a clear expression of the law governing such cases. McClain's Crim. Law, sec. 246; *State v. Cotton*, 31 Miss. 504; *State v. Fontenberry*, 55 Miss. 403; *State v. Smith*, 125 Mo. 2. (4) Defendant insisted on the court giving instruction number 5 offered by him which embodies the principle of common assault. The evidence in the case does not warrant such an instruction. The assault was either made with intent to kill or was in pure self-defense. *State v. Collins*, 81 Mo. 652; *State v. Thomas*, 99 Mo. 235; *State v. Mitchell*, 98 Mo. 257. (5) Nor should instructions upon a lower grade than that mentioned in the indictment be given unless there be evidence of such lower grade. *State v. Smith*, 114 Mo. 604; *State v. Umbls*, 115 Mo. 452; *State v. Henson*, 106 Mo. 66.

BURGESS, J.—At the April term, 1897, of the circuit court of Platte county, the defendant was convicted of a felonious assault with intent to kill one G. L. Andrews. The jury by their verdict failed to fix the punishment, whereupon the court assessed it at three years' imprisonment in the penitentiary. Defendant then filed motions for new trial and in arrest, which being overruled, he saved his exceptions and appealed.

At the time of the assault G. L. Andrews, upon whom it was committed, was a conductor on a freight train of the Chicago & Great Western Railroad, which runs through Platte county, Missouri. On the ninth

of October, 1894, when Andrews was running his train upon said road, he had orders at the town of New Market to wait for the south-bound passenger train and had headed in at that place. On going from the rear to the front end of the train he passed along the side of the cars and saw the defendant on the front end of a car. He requested him to get down, which he did, and walked with Andrews to the depot, where he left him and went around the depot. On going into the depot Andrews received orders to "wait" his train at Dearborn. He at once started out with his train. He had a stock car in his train that had to be set out at Dearborn, and when he reached that place he walked up where the brakemen were cutting off the car, and as he passed up along the train he saw the defendant on the same car again. He then said to him, "Captain, get out and stay out; I can not carry passengers, and I want you to get off; there will be a train along in ten minutes." He then asked the defendant where he was going. The defendant answered, "to Fossett." He told him that his train did not stop there. The defendant then got off the car and made some remark which Andrews did not understand. Andrews then walked away, and for a few minutes stood, perhaps fifteen feet from the side of the train, when he heard someone hollow "look out," and as he turned sideways the defendant struck him on the side of the head. He did not see what defendant held in his hand, but stated that there was a pile of "scraps" near by that the section men had collected along the road and thrown into a pile to be shipped out as soon as they had accumulated a sufficient amount for a carload. Next morning after the assault, a piece of scrap iron or a part of a car link was found near where he stood, and on it there was some blood and hair. Watson, the station agent, took charge of the piece of car link and

kept it for some time in his office, but it was misplaced by some means and was not introduced in evidence. After Andrews was struck by the defendant he fell to the ground, and was picked up by the brakemen and station agent in an unconscious condition, and placed upon his train and taken to Kansas City. One of the brakemen testified that he saw the defendant throw something at Andrews, but on account of its getting dark, he was unable to tell what it was. While upon the witness stand defendant admitted that he threw something at Andrews. He, however, could not tell whether it was iron, brick or wood that he threw. He claims to have committed the act in self-defense, stating that while he was standing upon the car and had been requested upon the two occasions mentioned to get down and off and not ride further, that he told Andrews that if he did not want him to ride on his train he would not, and that he did not intend to get on again, but that Andrews commenced and continued to make insulting remarks to him, and as he walked off followed him in close pursuit, and that in order to avoid or prevent being injured himself at the hands of Andrews, he picked up the piece of iron or brick, as the case may be, and threw it at Andrews.

The first point urged for a reversal of the judgment is with respect to the action of the court in giving the third instruction on the part of the State.

It is as follows:

"3. The court instructs the jury that before they can convict the defendant, they must be satisfied of his guilt beyond a reasonable doubt. In this connection the court further instructs the jury that to authorize you to acquit upon reasonable doubt alone, such doubt must be a substantial doubt of defendant's guilt, with a view to all the evidence in the case, and not a mere possibility of defendant's innocence."

It is claimed by defendant that this instruction does not properly define reasonable doubt, that it entirely ignores that element of doubt that might arise from the insufficiency of the evidence, and casts upon defendant the burden of proving his innocence. *State v. Blue*, 136 Mo. 41, is chiefly relied upon to sustain this contention, but there is a very material difference between the instruction upon reasonable doubt in the *Blue* case, and the one now under consideration, as a comparison will show. In that case reasonable doubt was defined as being "a substantial doubt growing out of and *consistent* with the evidence," while in this case it is defined as "a substantial doubt of defendant's guilt, with a view to all the evidence in the case; and not a mere possibility of defendant's innocence." It is true that a reasonable doubt may arise from the want of sufficient evidence of criminative facts to establish guilt, but this instruction did not impose upon defendant the burden of proving his innocence, and when taken as a whole, no one of ordinary intelligence could infer from it that defendant was guilty beyond a reasonable doubt, because there was no evidence of his innocence. An instruction in all essential particulars like the one in this case was approved by this court in *State v. Sacre*, 141 Mo. 64. Nor is the instruction obnoxious because of the fact that the plea of self-defense was interposed in this case.

Another contention is that error was committed in the refusal of the fourth and sixth instructions asked by defendant. They read as follows:

"4. The court instructs the jury that if they believe from the evidence that the defendant at the time and place mentioned in the indictment assaulted and struck the prosecuting witness, Andrews, with a piece of iron or a brick or any other missile, merely to inflict an ordinary battery upon him in the heat of passion

suddenly aroused by insulting epithets or words spoken to him by said Andrews at the time, but without any intention to inflict great bodily harm or to kill him, the said Andrews, then the jury will find the defendant guilty of a common assault and assess his punishment at a fine not exceeding one hundred dollars, or imprisonment in county jail not exceeding six months, or by both such fine and imprisonment.

"6.   The court instructs the jury that although they may believe from the evidence that the defendant struck Andrews with a piece of iron or stone or brick, yet if the jury believe from the evidence that said Andrews at the time was about to assault or strike, or that the defendant had a reasonable cause to apprehend a design on the part of Andrews to do him some personal injury, and that the defendant had reasonable cause to believe, and did believe, that said Andrews was about to carry such design into execution, and that the defendant without deliberation, premeditation or malice aforethought, as those terms have been defined in these instructions, and without any intention to kill said Andrews, but through fear induced by the attitude of said Andrews, although the jury may believe from the evidence that defendant was in no actual danger, and that said Andrews did not intend to inflict any personal injury upon the defendant, the jury can not find the defendant guilty of felonious assault, but they may find him guilty of common assault, and assess his punishment at a fine not exceeding one hundred dollars, or imprisonment in the county jail not exceeding six months, or both such fine and imprisonment."

These instructions were properly refused because not warranted by the evidence. Under the evidence the defendant was either guilty of felonious assault, or

he was guilty of no offense whatever. The assault was wanton, without justification or excuse.

The fifth instruction asked by defendant and refused was not applicable to the facts in the case, and was properly refused. The question as to whether or not the assault was committed with a dangerous and deadly weapon, as well also as all other issues involved, were fairly submitted to the jury by the instructions. Defendant had a fair trial, and as there is nothing in the record which would justify a reversal of the judgment, it is affirmed.

GANTT, P. J., and SHERWOOD, J., concur.

