# THE STATE v. SMITH, Appellant.

164   567
166   203

### Division Two, November 12, 1901.

1. **Threats:** AMOUNT OF EVIDENCE: LIMITATION. When threats of violence by deceased against defendant at different times and places have already been abundantly proven by eight witnesses, it is not reversible error, though a practice not to be commended, to refuse to hear evidence with respect to other and additional threats.

2. **Murder:** INSTRUCTION: PRESUMPTION: "OFFENSE CHARGED." The specific offense charged was murder in the first degree, and defendant was convicted of murder in the second degree. The instruction told the jury that "the defendant is presumed to be innocent of the offense charged." *Held* not error, as the words "the offense charged" do not refer only to murder in the first degree, but embrace murder in the second degree as well. Correctly interpreted, they include all degrees of homicide included in the indictment, and for which defendant was on trial.

3. ———: ———: WEAPON USED: READ TOGETHER. Although an instruction, when considered by itself, may be faulty, yet if, when read in connection with and in reference to others given, it presents the law of the case, it is not error.

4. ———: INTENT: WILLFULLY. Although no instruction was given, in so many words to the effect that an intention to kill must exist in order to constitute murder in the second degree, yet the requirements of the law are fully met if the instruction told the jury that if defendant "willfully," etc., and then proceeded to define "willfully," to mean "intentionally," etc.

5. ———: REASONABLE DOUBT. An instruction on the subject of reasonable doubt, substantially like the one given in State v. Cushenberry, 157 Mo. 168, is approved, for the reason given in that case.

6. ———: THREATS: WHEN ADMISSIBLE. Threats not communicated to the defendant are admissible only in case the evidence leaves a doubt as to whether the deceased was the aggressor at the time of the

homicide. And if the evidence clearly shows that defendant was the aggressor, evidence of non-communicated threats should not be admitted. And defendant being the aggressor, evidence of communicated threats should not be admitted in the absence of evidence that the threatener was attempting to carry them into effect. And in either such case, the threats should be taken from the consideration of the jury by instructions.

Appeal from Lawrence Circuit Court.—*Hon. Henry C. Pepper,* Judge.

AFFIRMED.

*Thomas F. T. Whitney, Thomas J. Delaney* and *William B. Skinner* for appellant.

(1)　There was evidence, in addition to that of defendant, tending to prove that the deceased began the difficulty which resulted in his death. There being such evidence, evidence of the previous quarrel between the defendant and deceased, and evidence of threats by deceased against defendant, whether expressed in plain and direct language or couched in vague phrases and inuendoes, and whether communicated to defendant or not, and whether near to or remote from the time of the killing, is admissible for the following purposes: first, as throwing light upon the action of the deceased at the time of the encounter; second, as having direct bearing upon the reasonableness of the grounds upon which defendant acted; third, as tending to show as well as sustain the charge that the attack or demonstration toward the attack was first made by the deceased. State v. Sloan, 47 Mo. 604; State v. Elkins, 63 Mo. 159; State v. Alexander, 66 Mo. 162; State v. Adams, 76 Mo. 355; State v. Grant, 79 Mo. 113; State v. McNally, 87 Mo. 650; State v. Wright, 141 Mo. 333. (2) Instruction 1, defining murder in the first degree, requires the jury

to find the facts beyond a reasonable doubt, and instruction 10 declares "That the defendant is presumed innocent of the offense charged" (not of any offense), "and before you can convict him the State must overcome that presumption by proving him guilty beyond a reasonable doubt," but nowhere is there an instruction on reasonable doubt in connection with the instruction on murder in the second degree or on the whole case. The fact, therefore, that the doctrine of reasonable doubt is mentioned in connection with murder in the first degree, emphasizes its absence from the instructions declaring the law of murder in the second degree. State v. Martin, 124 Mo. 514; State v. Wingo, 66 Mo. 181, 187; State v. Gonce, 79 Mo. 600. (3) So, while instruction 8 concludes by directing the jury to find the defendant guilty of murder in the first degree, yet if it is not a correct declaration of the law of first degree murder, it is error in this case, as the elements of murder in the second degree are all specifically enumerated in said instruction, and the jury are told that the evidence is sufficient to prove these elements if they can satisfactorily and reasonably infer their existence. This is error, because no instruction was given on the doctrine of reasonable doubt, either on the whole case or on the charge of murder in the second degree. So, also, the instruction leaves the jury to grope in the darkness or guess at what will, in law, amount to "sufficient reason or cause or extenuation." State v. Forsythe, 89 Mo. 671; State v. Hickman, 95 Mo. 329; State v. Owens, 79 Mo. 619; State v. Sprague, 149 Mo. 422. (4) Instruction 2, under the evidence of this case, is erroneous: first, because the question whether or not the billiard cues used were deadly weapons was not submitted. State v. Harper, 69 Mo. 425; second, because the question whether or not defendant intended to kill should have been submitted, as there can be no murder in the second degree without a specific intent

to kill, unless it appears that a deadly weapon was used from the use of which the law presumes an intent to kill if the act be done willfully and maliciously. State v. Kelley, 85 Mo. 144; State v. Wieners, 66 Mo. 11; State v. Wilson, 98 Mo. 440. (5) Instruction 9 is erroneous, misleading, vague, incomplete and prejudicial in this: First, the language, "If the jury believe from the evidence that the defendant did not have reasonable cause to believe, they can not acquit him on the ground of self-defense, although they may believe the defendant really thought that he was in danger," should have been followed by the declaration that the hypothetical facts would only justify a conviction of manslaughter in the fourth degree. Under these instructions the jury might well have found defendant guilty of murder in the second degree, and yet believe that he acted honestly although mistakenly. The honest belief that he was in danger negatives all malice and reduces the crime to manslaughter in the fourth degree, and the jury should have been so instructed in plain and unambiguous language, nor does anything in the instructions 5, 6 and 7 cover this point or cure this omission. State v. Curtis, 70 Mo. 594; State v. Edwards, 70 Mo. 480; State v. Harris, 73 Mo. 287; State v. McKinzie, 102 Mo. 620. Second. So, this instruction justifies defendant only in the event the jury believe that he had reasonable cause to believe it necessary to kill Watson. Suppose it was not necessary to kill, or suppose he did not strike with intent to kill, yet if it was necessary to strike to protect himself and more force was used than was necessary, death resulting; or if death resulted without intent to kill, he does not forfeit his right of self-defense. In other words, to avail one's self of the plea of self-defense it is surely not necessary that in defending himself he must intend to kill (which this instruction expressly declares). (6) Instructions 11 and 12 are not only erroneous but are highly

State v. Smith.

prejudicial in this: they take from the jury the consideration of all threats whether communicated or not and whether recent or remote, until, independently of such threats, the jury believe that the deceased provoked or began the difficulty. This is not the law. If the evidence at any stage raises the question whether or not deceased provoked or began the difficulty, then evidence of threats communicated or uncommunicated become admissible to aid the jury in determining whether or not the defendant did in fact provoke or begin the difficulty, as well as to show the nature of the attack and intention of deceased.

*Edward C. Crow,* Attorney-General, for the State.

(1) Instruction 11 can not be fairly construed to intimate to the jury that such threats might not be considered by them for any legitimate purpose in the case. 160 Mo. 123; 95 Mo. 484. This court has repeatedly held that although the deceased may have made threats, if he made no attempt to execute any previous threat, said threats will constitute no excuse or justification for slaying him, because it is not the law that a threatened man may hunt the threatener and slay, him because of the threat. Therefore, instruction 11 properly told the jury that if, at the time defendant struck and killed deceased, deceased was not assaulting or attempting to assault defendant or provoking a difficulty, then prior threats by deceased afford no justification for killing him. State v. Eaton, 75 Mo. 592; State v. Harris, 73 Mo. 287; State v. Taylor, 64 Mo. 358; State v. Hays, 23 Mo. 287; State v. Elkins, 63 Mo. 163; State v. Spencer, 160 Mo. 123. Instruction 12 told the jury the purpose of the communicated threats, i. e., to "determine whether defendant was justified in acting on appearances," when he struck deceased. They

were not told that they could not consider such threats for any other purpose, but if Wilson provoked the difficulty, they were competent for the purpose named. Threats alone would not have justified defendant in killing Watson. Indeed, if defendant provoked the difficulty, there was no self-defense in the case, but if Wilson provoked it, then the threats were competent to consider whether defendant had cause to believe himself in danger, certainly if there were no appearances to act on. If Watson had not provoked the difficulty—which he did not—defendant could not, merely because he had heard of his threats, go and kill him. If so, to justify homicide, all we need to do is to have some one communicate a threat to us. 2 Bishop's Criminal Procedure, sec. 619, p. 272; State v. Gilmore, 95 Mo. 554; State v. Starr, 38 Mo. 270; Whart. on Hom., 197. (2) While it is true the character, conduct and utterances of the defendant and the deceased and their relations to each other, tending to show their feeling and the motives, if any, for the commission of the crime, are admissible, yet as to prior fights, the rule is that details of a previous difficulty between the same parties will only be admissible if both are so connected that one is of the *res gestae* of the other; otherwise, not. 2 Bishop on Criminal Procedure, sec. 662. The length of the interval between the two is immaterial. The law is that while the fact of a prior difficulty or fight having occurred is competent, the irrelevant particulars thereof between the defendant and the deceased can not be shown. 2 Bishop's Criminal Procedure, sec. 630; Tarver v. The State, 43 Ala. 354; Pound v. State, 43 Ga. 88; McLean v. State, 16 Ala. 672; State v. Clayton, 100 Mo. 520; State v. Parker, 96 Mo. 389; State v. Jackson, 95 Mo. 623; State v. Tabor, 95 Mo. 585. The evidence of former difficulty was some six months before the killing, and was not sufficiently recent to be competent. Kelley Cr. Law and Pro., sec. 251, p. 159; State

v. Tasterman, 68 Mo. 408. (3) The argument that the instruction on reasonable doubt does not cover the whole case is not true, as it clearly instructs the jury that "If they have a reasonable doubt of defendant's guilt you must acquit him" not of murder in the first degree only, but acquit—which language covers the whole case—every crime with which defendant is charged. The rule is that where one instruction is given on reasonable doubt it is not error to omit it from another instruction. State v. Wright, 141 Mo. 334. (4) Instructions seven and eight both submit to the jury the question of whether or not the billiard cues were deadly weapons, and in instruction seven they are told that if the cues "were not deadly weapons," then they could only find him guilty of manslaughter; so, in finding him guilty of murder in the second degree, they must necessarily have found that cues were deadly weapons. Defendant was only convicted of murder in the second degree, and hence, can not be heard to complain of instructions as to murder in the first degree, because he is not injured thereby. State v. Christian, 66 Mo. 142. (5) Instruction number two, when taken with the other instructions in the case as a whole, announces correct legal principles applicable to the case at bar; therefore, there was no error in the giving of said instruction. The rule is that instructions are to be read all together as a whole, and when consistent, their meaning is to be collected from the whole context and not from detached instructions or phrases in them; and if when so treated their meaning is obvious and the legal principles announced are correct and applicable to the case, they are safe guides for the jury. State v. Matthews, 98 Mo. 125; State v. Noeninger, 108 Mo. 166; 128 Mo. 423; 98 Mo. 583; 104 Mo. 491; 106 Mo. 482.

BURGESS, J.—At the August term, 1900, of the cir-

cuit court of Lawrence county, the defendant was convicted of murder in the second degree, and his punishment fixed at forty years' imprisonment in the penitentiary, for having theretofore, at said county, assaulted and killed one Henry Watson with a billiard cue.

Defendant appeals.

The difficulty occurred in a saloon building in which there were three rooms, in Aurora, Lawrence county, Missouri. The building stands east and west. The middle room was occupied for a bar, and the back or east room for a billiard room. The evidence showed that the deceased, Watson, was playing billiards, and that defendant came to the door leading into the billiard room, when Watson said to him that he didn't want any trouble with him, and for him to go away, that he (Smith) had followed him around all day, to which Smith replied, "You son of a bitch, I can whip you any time." When this remark was made defendant pulled a rock out of his pocket and said to Watson, "You son of a bitch, I will fix it with you," and threw the rock at Watson, but missed him. There was evidence which tended to show that at this juncture Watson was rushing upon defendant with an open knife in his hand, when defendant took a billiard cue from a rack near by and struck Watson several times over the head breaking the cue into fragments. He then got another, and broke it over his head also, inflicting injuries from which Watson died the following day. The evidence upon the part of the State, however, tended to show that Watson had no knife at the time of the difficulty, and that defendant was the aggressor.

The court of its own motion instructed the jury as follows:

"1. The court instructs the jury if they shall find and believe from the evidence beyond a reasonable doubt that the defendant, Rel Smith, on or about the twenty-fourth day of March, 1900, at the county of Lawrence, and State of Mis-

souri, did willfully, feloniously, deliberately, premeditatedly and with malice aforethought, strike and wound Henry Watson with billiard cues, and if the jury further believe from the evidence that within a year and a day thereafter, to-wit, on or about the twenty-sixth day of March, 1900, the said Henry Watson, at the county of Lawrence and State of Missouri, died in consequence of said wounding and striking with the billiard cues aforesaid, the jury will find the defendant guilty of murder in the first degree as charged in the indictment.

"2. If the jury believe from the evidence that the defendant, on or about the twenty-fourth day of March, 1900, at the county of Lawrence and State of Missouri, feloniously, willfully, premeditatedly and of his malice aforethought (but without deliberation as defined in these instructions), struck and killed Henry Watson with billiard cues, then the jury should find the defendant guilty of murder in the second degree, as charged in the indictment, and assess his punishment at imprisonment in the penitentiary for a term of not less than ten years.

"3. The court instructs the jury that the term 'feloniously,' as used in the instructions, means wickedly and against the admonition of the law.

" 'Willfully' means intentionally, not accidentally.

" 'Deliberately' means in a cool state of the blood. It does not mean brooded over or reflected upon for a week or a day or an hour, but it means an intent to kill, executed by the defendant in a cool state of the blood, in furtherance of a formed design to gratify a feeling of revenge, or to accomplish some other unlawful purpose, and not under the influence of a violent passion suddenly aroused by some reasonable provocation.

" 'Premeditatedly' means thought of beforehand for any

length of time however short.

" 'Malice' does not mean mere spite or ill-will or dislike, as it is ordinarily understood, but it means that condition of the mind which prompts one person to take the life of another without just cause or excuse, and it signifies a state of disposition which shows a heart regardless of social duty and fatally bent on mischief.

" 'Malice aforethought' means that the act was done with malice and premeditation.

"4. If the jury believe from the evidence that the defendant provoked the difficulty or began the quarrel with the purpose of taking advantage of Watson, and of taking his life, or of doing him some great bodily harm, then there is no self-defense in the case, however imminent the peril of defendant may have become in consequence of an attack made upon him by Watson; and if in such circumstances the jury believe that the defendant struck and killed Watson, then the defendant is guilty of murder in the first degree, and the jury should so find.

"5. If the jury believe from the evidence that Henry Watson made an assault upon the defendant with a knife and attempted to take his life, or to do him some great bodily harm, and that the defendant, in resisting such attempt, unnecessarily took the life of said Watson, then the jury will find the defendant guilty of manslaughter in the second degree, and assess his punishment at imprisonment in the penitentiary not less than three nor more than five years.

"6. The court instructs the jury if they believe from the evidence that the defendant, on or about the twenty-fourth day of March, 1900, at the county of Lawrence and State of Missouri struck and killed Henry Watson in a heat of passion, without a design to effect death, but in a cruel or unusual manner, but not under such circumstances as to justify him upon the ground of self-defense, then the jury should find him guilty

of manslaughter in the third degree, and assess his punishment at imprisonment in the penitentiary not less than two nor more than three years, or by imprisonment in the county jail not less than six nor more than twelve months, or a fine not less than five hundred dollars, or by both a fine not less than one hundred dollars and imprisonment in the county jail not less than three months.

"7. The court instructs the jury if they believe from the evidence that the defendant, without the design to effect death and while in the heat of passion, struck Henry Watson with billiard cues, and that said billiard cues were not dangerous and deadly weapons, then the jury should find the defendant guilty of manslaughter in the fourth degree, and assess his punishment at imprisonment in the penitentiary for two years, or by imprisonment in the county jail not less than six months nor more than twelve months, or by a fine not less than five hundred dollars, or by both a fine not less than one hundred dollars and imprisonment in the county jail not less than three months.

"8. The court instructs the jury that he who willfully uses upon another at some vital part a deadly weapon, must in the absence of qualifying fact, be presumed to know that the effect is likely to be death, and knowing this must be presumed to intend death, which is the probable and ordinary consequence of such an act; and if such deadly weapon is used without just cause, he must be presumed to do it wickedly or from a bad heart. If, therefore, the jury believe from the evidence that the defendant took the life of Henry Watson by striking him in a vital part with billiard cues, and that said billiard cues were dangerous and deadly weapons, with a manifest design to use such weapons upon him, and with sufficient time to deliberate and form the conscious purpose to

kill, and without sufficient reason or cause of extenuation, then such killing is murder in the first degree. And while it devolves upon the State to prove the willfulness, deliberation, premeditation and malice aforethought, all of which are necessary to constitute murder in the first degree, yet these need not be proved by direct testimony, but may be deduced from all the facts and circumstances attending the killing, and if they can satisfactorily and reasonably infer their existence from all the evidence, they will be warranted in finding the defendant guilty of murder in the first degree.

"9. The court instructs the jury that if they believe from the evidence that at the time defendant struck Watson he had reasonable cause to apprehend a design on the part of Watson to take his life or do him some great personal injury, and that there was reasonable cause for him to apprehend immediate danger of such design being accomplished, and that to avert such danger he struck, and at the time he struck he had reasonable cause to believe and did believe that it was necessary for him to strike and kill Watson to protect himself from such apprehended danger, then the jury should acquit him on the ground of self-defense. It is not necessary that the danger should have been actual or real or impending and about to fall; all that is necessary is that defendant had reasonable cause to believe and did believe these facts. On the other hand, it is not enough that defendant should have so believed; he must have had reasonable cause to so believe. Whether or not he had reasonable cause is for the jury to determine under all the facts and circumstances given in evidence. If the jury believe from the evidence that the defendant did not have reasonable cause to believe, they can not acquit on the ground of self-defense, although they may believe the defendant really thought he was in danger.

"10. The court instructs the jury that the defendant is

presumed to be innocent of the offense charged; before you can convict him the State must overcome that presumption by proving him guilty beyond a reasonable doubt. If you have reasonable doubt of defendant's guilt you must acquit him. But a doubt to authorize an acquittal must be a substantial doubt founded on the evidence, and not a mere possibility of innocence.

"11. The court instructs the jury if they shall find and believe from the evidence that Henry Watson made any threats against the life of defendant which were not communicated to him, such threats should be considered by the jury for the purpose of determining the intention of Watson at the time he provoked and entered into the difficulty with the defendant, provided the jury believe from the evidence that Watson did provoke and enter into the difficulty with the defendant.

"12. The court instructs the jury that if they believe from the evidence that Henry Watson made any threats against the life of defendant, and that such threats were communicated to defendant before the killing, the jury may take into consideration such threats in determining whether defendant was justified in acting upon appearances when he struck Watson with the billiard cues, provided the jury believe from the evidence that Watson provoked and entered into the difficulty with the defendant.

"13. The court instructs the jury if they believe from the evidence that the defendant provoked and entered into the difficulty with Watson, and had previously prepared himself for an assault upon Watson with the intent to take his life or do him some great bodily harm, and that Watson, at the time of the difficulty, did not attempt to assault or strike the defendant, then any threats that Watson may have made against the life of defendant would not justify or excuse him in striking and killing Watson.

"14. If the jury believe from the evidence that the defendant intentionally struck and mortally wounded Henry Watson in a vital part with billiard cues, and that said billiard cues were dangerous and deadly weapons, the law presumes that the killing was murder in the second degree, in the absence of proof to the contrary, and it devolves upon the defendant to adduce evidence to meet or repel that presumption, unless the same has been met and overcome by evidence introduced by the State.

"15. The court instructs the jury that the defendant is a competent witness in his own behalf, but the fact that he is the accused party on trial, and testifying in his own behalf, may be considered by the jury in determining what weight and credit they will give to his testimony.

"16. The jury are the sole judges of the credibility of the witnesses and the weight to be given their testimony. In determining such credibility and weight you should take into consideration the character of the witnesses, his or her manner on the stand, his or her relations to or feelings toward the defendant or the deceased, the probability or improbability of his or her statements, as well as all the facts and circumstances given in evidence. In this connection, if the jury believe from the evidence that any witness has knowingly sworn falsely as to any material fact in the case, the jury are at liberty to disregard all or any part of such witness's testimony."

To the giving of which said instructions, the defendant at the time objected and excepted.

The defendant then asked the court to instruct the jury as follows:

"1. The court instructs the jury that the defendant is presumed to be innocent until he is proven to be guilty beyond a reasonable doubt, and this presumption attends him throughout the entire trial. It never devolves upon the defendant to

prove his innocence. In this case the defendant pleads self-defense. Now, if, after a full and fair comparison and consideration of all the facts and circumstances in evidence, the jury have a reasonable doubt as to whether the killing of Watson was feloniously done as charged in the indictment, or whether it was done in self-defense as defined in these instructions, the defendant is entitled to the benefit of such doubt and you should return a verdict of not guilty.

"2. The court instructs the jury that the law clothes the defendant with the presumption of innocence which attends and protects him throughout every stage of the proceedings against him until overcome by testimony which proves him guilty beyond a reasonable doubt. It is not enough in a criminal case to justify a verdict of guilty that there may be strong suspicions or even strong probabilities of the guilt of the defendant, but the law requires proof by legal and credible evidence of such a nature that when it is all considered it produces a clear and satisfactory conviction of defendant's guilt. And unless the State has so proven the guilt of the defendant in this case he is entitled to a verdict of not guilty.

"3. You are further instructed that although you may believe the defendant struck and killed Watson, yet if you should further find and believe that at the time of such killing and striking the defendant had, in consequence of the acts, attitude and surroundings of the parties, reasonable cause to apprehend and did apprehend that the deceased was about to do him (the defendant) some great bodily injury, or to take his life, and that the defendant did such striking and killing to save himself from the infliction of such injury or from the taking of his life, you will find the defendant not guilty, because the killing done under such circumstances and for such purpose is justifiable in law, because it was a killing done in self-defense.

"4. You will be careful to observe that the danger the

defendant apprehended need not be real or actual, nor need it be a danger in fact impending or about to fall on him. It is sufficient to warrant an acquittal on the ground of self-defense if you shall believe that the defendant actually apprehended such danger and that such apprehension was a reasonable one on his part, and that he in good faith under such apprehension struck and killed the deceased to protect himself, and in this connection the court further instructs you that the defendant can not be deprived of his right of acquittal on the ground of self-defense, because it may be shown that he was in fact exposed to no danger whatever at the hands of the deceased.

"5. In determining as to the apprehensions of defendant at the time of the striking and the reasonableness of such apprehensions, you should take into account all transactions between the defendant and the deceased on the day of the killing, together with all the facts and statements of others connected with such transactions, acts and statements, and you should give such transactions, acts and statements in connection with all the other evidence before you, for the purpose herein mentioned, such weight as you may deem proper."

Which request to so instruct the jury was by the court refused; to which ruling and action of the court, the defendant objected and excepted at the time.

The record disclosed that after defendant had introduced and examined eight different witnesses with respect to threats made by Watson against him, some of which were communicated to him and others that were not, the court refused to allow defendant to introduce any further testimony on the subject of threats, to which ruling defendant excepted.

Defendant also offered to prove by a witness by the name of Neill, that about two or three months before the homicide he saw Watson assault the defendant in a street in Aurora, which upon objection by the State was excluded.

The point is made that under the circumstances, evidence of the previous quarrel between the defendant and deceased, and evidence of threats by deceased against defendant, whether communicated to defendant or not, and whether near to or remote from the time of the homicide, was admissible for the purpose of (1) throwing light upon the action of the deceased at the time of the encounter; (2) as having direct bearing upon the reasonableness of the grounds upon which defendant acted; (3) as tending to show as well as sustain the charge that the attack or demonstration toward the attack was first made by the deceased.

The defense was self-defense, and as the evidence was somewhat conflicting as to who was the aggressor, the evidence offered by defendant of threats of violence by deceased against him was clearly admissible under repeated adjudications of this court for the purpose of throwing light upon the action of the deceased at the time of the difficulty, as bearing upon the reasonableness of the grounds upon which defendant acted, and as tending to show that the deceased was the aggressor. [State v. Sloan, 47 Mo. 604; State v. Elkins, 63 Mo. 159; State v. Alexander, 66 Mo. 162; State v. Adams, 76 Mo. 355; State v. Grant, 79 Mo. 113; State v. McNally, 87 Mo. 650; State v. Wright, 141 Mo. 333.]

But it does not necessarily follow, we think, under the facts disclosed by the record, that the judgment should be reversed because of the refusal of this court to hear evidence with respect to other and additional threats made by deceased against defendant, after having heard evidence by so many witnesses, at least eight, in regard to the same subject-matter, though made at different times. There must be a limit to such inquiries somewhere in the course of a criminal trial in order to avoid unnecessary consumption of the time of the court, and it does seem to us that it had been reached at the time the

court announced that it would hear no more evidence in regard to threats. Especially when threats of violence by deceased against defendant at different times and places had already been abundantly proven. It was not, therefore, prejudicial to defendant, nor an abuse of its discretion, for the court to refuse to hear still further evidence on the same subject. While it would have been better for the court to have heard the evidence, the judgment should not, under the circumstances, be reversed for its failure to do so.

It is claimed that under the instructions the jury were not required to find, beyond a reasonable doubt, the facts constituting murder in the second degree.

The tenth instruction told the jury that, "the defendant is presumed to be innocent of the offense charged; before you can convict him the State must overcome that presumption by proving him guilty beyond a reasonable doubt. If you have a reasonable doubt of defendant's guilt you must acquit him, but a doubt to authorize an acquittal must be a substantial doubt, founded on the evidence, and not a mere possibility of innocence." It is argued that the words, "of the offense charged," as used in this instruction, have reference to murder in the first degree, the specific defense charged, and do not embrace murder in the second degree, but this position we think untenable. Correctly interpreted they include all grades of homicide included in the indictment, and for which defendant is on trial. Under our rulings an indictment for murder in the first degree embraces all grades of homicide, and when the words, "offense charged," are used in an instruction under such circumstances they mean and have reference to the offense for which the defendant is on trial. It was, therefore, unnecessary to confine the instruction to murder in the second degree, but was sufficient to cover the question of reasonable doubt by one general instruction.

State v. Smith.

The second instruction is criticised upon the grounds that it failed to submit to the jury the character of the billiard cues, with which the homicide was committed, whether deadly or not, and the question as to whether or not defendant intended to kill deceased, to the jury.   If this instruction were to be considered by itself and without regard to other instructions in the case it is doubtful if it could be upheld, but the instructions bearing upon the offense of which defendant was convicted must be read together and if they present the law of the case when thus considered, that is all that is necessary.

By the seventh instruction the jury were told that if they believed from the evidence that the billiard cues were not dangerous and deadly weapons, they could only find the defendant guilty of manslaughter, while by the fourteenth instruction they were told that if they believed from the evidence that the defendant intentionally struck and mortally wounded Henry Watson in a vital part with billiard cues, and that said billiard cues were dangerous and deadly weapons, the law presumes that the killing was murder in the second degree, in the absence of proof to the contrary, and it devolves upon the defendant to adduce evidence to meet or repel that presumption, unless the same has been met and overcome by evidence introduced by the State, and the jury having found defendant guilty of murder in the second degree it logically follows that they must have found that the cues were dangerous and deadly weapons, otherwise they would have acquitted him of murder, and found him guilty of manslaughter.   So that by their finding in the one instance, the cues were dangerous and deadly weapons, while their conclusion affirmed the idea that they were.

As to the other propositions, it will be conceded that in order to constitute murder in the second degree there must exist in the mind of the person committing the homicide at the time, an intention to kill.   And while the instruction under

comment did not, in so many words, tell the jury that such an intent was necessary, it told the jury that if defendant "willfully," etc., struck and killed Henry Watson with billiard cues they would find him guilty, while the third instruction defined "willfully" as being intentionally, not accidentally.    If then the word willfully means intentionally, they mean one and the same thing, and the use of the word willfully was all that was necessary.

The ninth instruction is claimed to be erroneous, misleading, vague and incomplete for the reason that the words, "if the jury believe from the evidence that the defendant did not have reasonable cause to believe, they can not acquit him on the ground of self-defense, although they may believe the defendant really thought he was in danger," should have been followed by the declaration that the hypothetical facts would only justify a conviction of manslaughter in the fourth degree.    This instruction has reference alone to the plea of self-defense, and is in form often approved by this court, with the exception of the omission of a few words after the words "may believe" in the last sentence which does not destroy its sense or meaning.    It has nothing whatever to do with another feature of the case, and is not open to the objections urged against it.

Various objections are urged against the tenth instruction in reference to reasonable doubt.    But this instruction is substantially like one upon the same subject which was approved by this court in the recent case of the State v. Cushenberry, 157 Mo. 168, of which it was said, SHERWOOD, J., speaking for the court:    "Nothing objectionable is seen in this instruction.    It is said in support of the objection that it 'did not allow an acquittal on account of any reasonable doubt arising from any lack of insufficiency in the evidence.'    No reasonable doubt can arise merely on the fullness and completeness of the evidence; it is only where evidence is absent or lacking that such doubt

State v. Smith.

can arise.   Whenever the sufficiency of the evidence is considered, necessarily you must consider its insufficiency; the two are inseparable in thought."

The eleventh and twelfth instructions are complained of upon the ground that they take from the jury the consideration of all threats whether communicated or not, and whether recent or remote, unless independently of such threats, the jury believe the deceased provoked or began the difficulty.   Where threats have not been communicated to the defendant they are only admissible in case the evidence leaves a doubt as to whether the defendant or the deceased was the aggressor at the time of homicide; and in this case the evidence clearly shows, we think, that the defendant was the aggressor, and under such circumstances the evidence was inadmissible for any purpose.   [State v. Alexander, 66 Mo. 161.]   So with respect to the communicated threats, defendant being the aggressor; in the absence of evidence that deceased was attempting to carry them into execution such evidence was inadmissible.   Thus in State v. Clum, 90 Mo. 482, it was said:   "Threats alone, unaccompanied by an overt act or outward demonstration, will not justify any one in hostile acts towards those making the threats; the danger must be immediate.   [Bishop Crim. Law (5 Ed.), sec. 843; 1 Bishop Crim. Proc., sec. 619.]   And if a person thus threatened, with no excuse in the way of self-defense, because of outward demonstration being made against him, kills the threatener, the slayer will not be allowed to lay before the jury before whom he is tried for the homicide, the known threats on which he bases his unlawful action.   [1 Bishop Crim. Proc., sec. 620; State v. Alexander, 66 Mo. 148; State v. Taylor, 64 Mo. 358.]"   The same may be said with respect to any previous assault by deceased upon defendant.   It follows from what has been said, that the instructions were not erroneous in permitting the consideration of such evidence by the jury, provided Watson

did provoke and enter into the difficulty, and not otherwise.

The thirteenth, fourteenth, fifteenth and sixteenth instructions are also complained of, but, as we think, without just ground therefor. They seem to present the law of the case as we understand it, and in accordance with repeated decisions of this court.

Finding no prejudicial or substantial error in this record, we affirm the judgment. All concur.