# THE STATE v. JOSEPH MILLER, Appellant.

### Division Two, March 30, 1915.

1. **DEADLY WEAPON: Shown by Result.** A rock may be shown to be a deadly weapon by proof that the defendant threw it at deceased, that it struck him on the back of his head and that the stroke broke his neck and caused a hemorrhage which produced death; and such proof authorized the giving of an instruction for murder in the second degree without further proof of the character or dimensions of the rock. A deadly weapon is one by which death would likely be produced when used in the manner stated.

2. ———: ———: **Charged in Information.** Where the fatal character of the wound inflicted by the rock is shown, it is unnecessary that the information use the words "with a deadly weapon;" and if used, they may be considered as surplusage, and direct proof of the nature of the weapon dispensed with.

3. **INSTRUCTION: Manslaughter in Third Degree: Intentional Homicide.** The court should not give an instruction for manslaughter in the third degree where the evidence tends to

show the killing was intentional. Where at the altercation in the afternoon preceding the homicide defendant declared he would "get" deceased later and after a scuffle with deceased that evening in the saloon attempted to procure a pistol from the bartender with which to shoot deceased, and failing in that obtained and threw a rock at deceased as he was passing out through the saloon door, striking him on the neck and killing him, the court did not err in refusing to give an instruction for manslaughter in the third degree, on the thory that the killing was "in a heat of passion without a design to effect death."

4. ARGUMENT TO JURY: No Request for Further Rebuke. If defendant is not satisfied with the rebuke administered to the prosecuting attorney for traveling out of the true lines of argument to the jury, and desires that he be further rebuked, it is his duty to request it; otherwise, he will not afterwards be heard to complain of the remarks.

5. ———: General Objection. An objection to statements by the prosecuting attorney, made either in his opening statement or in subsequent argument to the jury, should give some specific reason why they are objectionable, and if none is given the court is authorized in overruling the objection.

Appeal from Jackson Criminal Circuit Court.—*Hon. Ralph S. Latshaw*, Judge.

AFFIRMED.

*Lloyd Martz* and *Broaddus & Crow* for appellant.

(1) The weapon used, if any, was not described to the jury and it was not introduced in evidence so they could view it, so that there is no evidence in the case proving or tending to prove that the defendant used a dangerous and deadly weapon. What is a dangerous and deadly weapon is a question of fact and there must be some evidence tending to show that fact before the issue can be submitted to the jury, and there being no such evidence in the record, it was clearly erroneous for the court to give instruction number 3 submitting that issue to the jury. (a) If there is any evidence in this case tending to prove the use of a

dangerous and deadly weapon by defendant in causing the death of Charles Donahue, then the court clearly erred in failing to instruct the jury on manslaughter in the third degree, all the elements of manslaughter in the third degree being present, if there was any evidence of the use of a dangerous and deadly weapon, viz., heat of passion, self-defense, involuntary killing with a dangerous and deadly weapon. The error in failing to instruct the jury on manslaughter in the third degree is very clear; if there was any evidence of the fact the jury would well have found under this evidence that the defendant used a dangerous and deadly weapon in the heat of passion without intending to kill Charles Donahue and they were precluded from finding defendant guilty of manslaughter in the third degree because under instruction number 4 to find defendant guilty of manslaughter it was necessary for them to find affirmatively that no deadly or dangerous weapon was used. It was the duty of the jury if they found that a dangerous and deadly weapon was used, to return a verdict of murder in the second degree when clearly the evidence entitled the defendant to a submission under manslaughter in the third degree, and this defendant was thereby deprived of a substantial right to a fair trial on account of the error of the court in failing to so instruct. State v. Elliott, 98 Mo. 150; State v. Wilson, 98 Mo. 440; State v. Peak, 85 Mo. 193; State v. Hanson, 231 Mo. 14. (2) The prosecuting attorney in this case in his opening statement, the examination of witnesses and in his argument paraded before the jury and urged to the court in the presence of the jury both in statement, argument and offers to prove that defendant was to blame for alleged misconduct of Mrs. Miller and also for the serious condition of health of Mrs. Donahue, mother of deceased. The presentation of incompetent, irrelevant and immaterial matters to the jury in this case was so vigorous and persistent that this court must necessarily

find that the act of the prosecuting attorney was for the purpose of poisoning the mind of the jury and preventing defendant having a fair and impartial trial of his case, and the court must find that the prosecuting attorney accomplished his purpose. State v. Wellman, 253 Mo. 302; State v. Webb, 254 Mo. 414. (3) Instruction number nine is erroneous. The first part of this instruction is that the defendant had a right to defend himself if "the deceased was about to kill defendant or to do him some great bodily injury." This declaration of law is clearly erroneous and is not cured by the balance of the instruction. It is not the law that the defendant had the right to defend himself if the deceased was about to kill defendant or do him some great bodily harm. These words are disconnected; they appear in an entirely separate sentence from the balance of the instruction and the attempt to declare the law afterwards does not cure the clear, distinct, erroneous rule announced in the first sentence of the instruction, in fact the two are so inconsistent and contradictory that both cannot stand.

*John T. Barker,* Attorney-General, and *S. P. Howell* for the State.

(1) Under the particular circumstances of this case the court properly admitted evidence concerning the preliminary difficulty for the purpose of showing malice or motive which prompted the homicide. The defendant rested his case upon the right of self-defense, while the theory of the State was the homicide was but the culmination of the bitter feeling engendered in the controversy which occurred near the home of Charles Donahue. It is manifest, therefore, that it was exceedingly important for the jury to have placed before them the facts connected with the preliminary difficulty in order that they might determine who was the aggressor and what, if any, motive the defendant

had in striking the fatal blow at the Labello saloon. The rule is well established that evidence of a prior difficulty than the crime for which the party is on trial is admissible when such testimony tends to make clear the matter under investigation or to show the malice which was given expression in the crime committed. 21 Cyc. 894; State v. Tettaton, 159 Mo. 377; State v. Goddard, 162 Mo. 229; State v. Dettmer, 124 Mo. 433; State v. Mounce, 106 Mo. 229; State v. Mounce, 106 Mo. 229; State v. Hyde, 234 Mo. 237; State v. Rudolph, 187 Mo. 85; State v. Turner, 246 Mo. 617; 2 Wharton's Crim. Evidence (10 Ed.), p. 1726. (2) In appellant's brief he makes the definite assignment of error that the court failed to instruct on manslaughter in the third degree. This assignment is not properly preserved for review on appeal, yet an examination of the evidence discloses that the facts did not justify an instruction on manslaughter in the third degree. It is clearly provided in Sec. 4462, R. S. 1909, that manslaughter in the third degree cannot exist when the killing is intentional. There is abundant evident showing the existence of a previous grudge and that the defendant gave utterance to the threat at the time of the preliminary difficulty in front of decedent's home that, "I will get you later," which facts preclude any claim that the killing was not intentional. In the execution of that threat, the State submitted proof that the defendant struck the deceased with a deadly and dangerous weapon, which fact was evidenced by the death of Donahue, which followed almost instantly after the blow was delivered. There is an entire absence of proof, and, in fact, no pretense is made by the defendant that the blow was given with any other purpose or design than to effect death. The defendant under the facts of this case either acted in self-defense or was guilty of murder in the second degree or manslaughter in the fourth degree. Sec. 4462, R. S. 1909; Kelley's Crim. L. & Pr., sec. 496, p. 440; State v. Pettit,

119 Mo. 416; State v. Watson, 95 Mo. 415; State v. Dunn, 80 Mo. 688; State v. Vinso, 171 Mo. 591; State v. Barutio, 148 Mo. 255; State v. Strong, 153 Mo. 555; State v. McKenzie, 228 Mo. 401; State v. Hanson, 231 Mo. 26.  (3)  The text writers and the decisions of this court clearly recognize the rule that the question whether a weapon is deadly may be inferred from the fact that it produces death under the particular circumstances used, even in the absence of any evidence on the trial as to its quality or dimensions.  Wharton on Homicide (3 Ed.), p. 136; State v. Bowles, 146 Mo. 13; State v. Grant, 152 Mo. 69; State v. Drumm, 156 Mo. 219; State v. Gartrell, 171 Mo. 507; State v. John, 172 Mo. 225; State v. Harris, 209 Mo. 429; State v. Dunn, 221 Mo. 541; State v. Belfiglio, 232 Mo. 235; State v. Keener, 225 Mo. 496; Hamilton v. People, 113 Ill. 38; State v. West, 51 N. C. 506.  (4)  In instruction number nine the law, as to the right of self-defense, is correctly stated.  State v. Banks, 167 S. C. 505; State v. McCarver, 194 Mo. 729; State v. Groves, 243 Mo. 550; State v. Lewis, 248 Mo. 508.

WALKER, J.—In an information filed by the prosecuting attorney of Jackson county the defendant was charged with murder in the second degree in having killed one Charles Donahue.  Upon a trial defendant was convicted as charged and his punishment assessed at ten years' imprisonment in the penitentiary.  From this judgment he applied for and was granted an appeal to this court and a stay of execution was ordered upon his giving the bond required.

The deceased, a young man with a disabled hand, lived with his old and invalid mother at 315 East Eighteenth street in Kansas City.  The defendant lived across the street with his family, consisting, so far as the record shows, of his wife and a little girl eight or nine years of age.  The afternoon preceding the homicide the defendant and his wife became very

much incensed at the Donahues, because, as defendant's wife charged, a sister of the deceased had, in sprinkling the lawn, thrown water on the defendant's little girl. Later, at about six o'clock p. m., an officer was called to the scene to quell the disturbance caused by the loud and boisterous conduct of defendant's wife. Upon his arrival the officer found defendant and his wife in front of the residence of old Mrs. Donahue. The deceased said he did not desire defendant and his wife arrested, but asked the officer to take them away, as his mother was very ill and their conduct was annoying her. The wife was drunk, with uncovered head and dishevelled hair, and loudly and profanely abused the Donahues. The defendant attempted to drag her away, but from time to time shook his fist and hurled imprecations at the Donahues. When the officer asked defendant the nature of the trouble he said that Charles Donahue had struck his wife. The officer asked him if he wanted Donahue arrested, to which he replied, "I will take care of that myself," or "I will get him later." The officer drove the defendant and his wife away, and upon their promise not to return let them go without arresting them.

About 8:30 o'clock that evening the deceased, accompanied by two others, went into a saloon in the immediate neighborhood to get a glass of beer. At the time there were in the saloon, in addition to the bartender, three others, one of them a brother of defendant. Soon thereafter defendant came in and he and the deceased clinched, and after a short struggle defendant broke away and, running behind the bar, asked the bartender to give him a revolver. The latter complied, but immediately thereafter took the pistol away from the defendant and pointing it at the deceased and his two associates ordered them out of the saloon. While this was occurring the brother of the defendant struck, first the deceased, and then one of his associ-

264Mo26

ates, felling the latter to the floor. The two who had entered with the deceased then ran out of the saloon followed by the brother of the defendant, and the deceased fell out of the saloon door as the result of a blow on the the back of the head from a rock in the hand of the defendant. The deceased struck the sidewalk face downward, and as he fell the defendant ran out and kicked or stamped him on the head and neck. From the injuries thus received the deceased died before he was removed to his mother's home near by. The autopsy disclosed contused wounds on his face, different parts of his head and the back of his neck, and that the latter was broken. The deceased was not under the influence of liquor at the time he was assaulted, and no weapons of any character were found on his person.

Defendant's witnesses testified that the deceased was the aggessor; that with two others he entered the saloon, called for beer, and seeing defendant said, "Joe Miller, I am looking for you," and followed this with an attack upon defendant; that Miller ran behind the bar and asked the bartender for his pistol. The latter says he refused, but ordered the parties out of the saloon. The deceased then tried to hit the defendant with something or to cut him, but the witness, who was the bartender, could not state the nature of the weapon. In the main the witnesses for the defense corroborated the testimony of the defendant. Aside from the Millers those present were Labello, the bartender, O'Neilio and Temposky—names indicative of Italian and Galician origin, this aside, however, save to add that the jury did not believe those who testified for the defense.

After defining the technical words employed in an indictment or information charging murder, the court instructed the jury on murder in the second degree; manslaughter in the fourth degree; what testimony must be excluded in determining the intent with

which the act was done; stating the extent of the presumption of innocence; defining a reasonable doubt; and the right of self-defense, if it was found that he deceased was about to do the defendant some bodily harm; and as to the credibility of witnesses and the weight and value to be given their testimony.

Four assignments are urged as constituting error: (1) That in the absence of testimony to show the character of a dangerous and deadly weapon, in this case a rock, charged in the information to have been used by defendant in striking the fatal blow, an instruction for murder in the second degree was not authorized; (2) Instructions for manslaughter in the third degree should have been given; (3) that the instruction in regard to self-defense was erroneous; and (4) that the conduct of the prosecuting attorney was prejudicial.

I. *Proof of Nature of Weapon.*—The testimony showed that the defendant struck the deceased on the back of the head or at the junction of the skull and cervical vertebrae with a rock, which dislocated or broke the neck of the deceased and caused a hemorrhage from which death immediately ensued. The rock was alleged in the information and the instructions to have been a dangerous and deadly weapon, but it was not described in the testimony, nor was it produced at the trial. This was not such a failure of proof as to constitue error. If it was shown by the testimony that the effect produced by defendant striking the deceased with the rock was an injury from which he died, it was sufficient evidence of the deadly character of the weapon employed. A deadly weapon is one by which death would likely be produced when used in the manner in which the testimony shows that it was used in this case. That it was so used was testified to by witnesses, and it does not follow, because its exact dimensions were not described and there was no direct proof as to

its dangerous or deadly character, that such character was not shown by the effect resulting from its use.

In discussing the character of the weapon used we would not be understood as holding that it was necessary for the information to charge that the offense was committed with a deadly weapon, but this fact is stated incidentally in dealing with the presumption arising from the use of such a weapon and the sufficiency of the evidence to establish its nature. The rule thus announced is fully sustained by this court in State v. Bowles, 146 Mo. l. c. 13. Holding as we do that the use of the words "with a deadly weapon" in the information was unnecessary in the instant case, because of the proof as to the fatal character of the wound inflicted, the employment of the words referred to may be considered as surplusage and direct proof of the nature of the weapon may be dispensed with. This distinction is clearly made in the case of State v. Harris, 209 Mo. 423, in which the general rule announced in the Bowles case, supra, is, under a proper state of facts, approved. The distinguishing features between these two cases being that in the Harris case testimony as to the knife shown to have been used or the wounds inflicted was not such as to authorize the assumption that at a matter of law the wound was inflicted with a deadly weapon, but upon it having been shown that the weapon was "a little four-bladed pocketknife" it was held that whether or not it was a deadly weapon, in the absence of proof that the wound inflicted indicated the use of such a weapon, should have been submitted to the jury as a predicate to the presumption the court invoked for the purpose of allowing the jury to infer a felonious intent to kill. No such limitation as is found in the Harris case is present in the instant case—the evidence in the latter more nearly conforming to the facts in the Bowles case and those in State v. Keener, 225 Mo. 488, which must be held to be ruling authorities in regard to the proof necessary to show

the use of a dangerous and deadly weapon and as a consequence to authorize the giving of an instruction for murder in the second degree.

II. *Manslaughter: Third Degree.*—It is contended that error was committed in not giving an instruction for manslaughter in the third degree.

The statute tersely defines this degree of homicide to be "the killing of another in a heat of passion without a design to effect death, by a dangerous weapon, in any case except such wherein the killing of another is justifiable or excusable." [Sec. 4462, R. S. 1909.]

In construing this statute this court holds that the provision "without a design to effect death" means that the killing must have been unintentional. [State v. Prince, 258 Mo. l. c. 329, and cases cited; State v. Elliott, 98 Mo. l. c. 156.]

The facts must determine whether the killing in the instant case was of such a nature as to bring it within the statute defining manslaughter in the third degree.

In the altercation which occurred between the parties before the residence of the mother of the deceased the afternoon preceding the homicide, the defendant declared to the police officer that he would "get the deceased later." This threat, supplemented by the fact that the defendant after the scuffle with the deceased in the saloon attempted to procure a pistol from the bartender to shoot the deceased, sufficiently determines the intention of the defendant and tends to prove malice. In the presence of these facts the trial court did not err in refusing to instruct for manslaughter in the third degree, because it cannot be said that the killing was not intentional. [State v. Hanson, 231 Mo. 14; State v. McKenzie, 228 Mo. 385; State v. Robertson, 178 Mo. 496; State v. Vinso, 171 Mo. 576; State v. Pettitt, 119 Mo. l. c. 416.]

We have examined the cases cited by the appellant in support of the proposition that an instruction for manslaughter in the third degree should have been, given, and find that they do not sustain appellant's contention, on account of the facts therein being at a variance with those in the instant case.

III.  *Self-Defense.*—Appellant contends that the instruction for self-defense is erroneous.  This instruction contains all the necessary elements to authorize the jury to acquit defendant if they found that the facts presented a case of self-defense.  Almost an exact counterpart of the instruction is to be found in State v. McQuitty, 237 Mo. 232.  If other precedents were necessary to sustain the instruction, they may be found in State v. Tooker, 188 Mo. l. c. 446, and State v. McCarver, 194 Mo. l. c. 729, which, while differing in phraseology, contain all the essential elements to be found in the instruction under review and follow a long line of cases on self-defense beginning with State v. Shoultz, 25 Mo. 128.

Interpreted according to its own words and context, the instruction under review is not fairly subject to appellant's criticism.  It is neither to be read nor construed by piecemeal, but altogether.  Thus read it is a plain and correct statement of the law in regard to self-defense.  We hold, therefore, that the appellant's contention in this regard is without merit.

IV.  *Conduct of State's Attorney.*—The conduct of the prosecuting attorney is complained of.  An examination of the transcript shows that where objections to the alleged improper conduct were made, the court in all except one or two instances, which we will note later, sustained the objections and cautioned the prosecuting attorney to keep within the record, and in addition formally instructed the jury to disregard all testimony in regard to any trouble between the de-

ceased and the wife of the defendant in the absence of the latter. If the appellant had desired that the prosecuting attorney be further rebuked he should have requested same. This is a rule too well established to necessitate the citation of authorities to sustain it. In the instances where the court refused to sustain appellant's objections no such objections were made and exceptions saved as to authorize our reviewing the matter complained of. Certain remarks of the prosecuting attorney in his argument to the jury are especially alleged to be error—this entire argument unnecessarily encumbers the record when only the portions complained of should have been preserved. In the one instance the objection made by counsel for the appellant was in this language: "We object to that because it is contrary to and in violation of the instructions of the court. We ask for a ruling of the court on it." If for no other reason, the court was authorized on account of no specific reason being stated in the objection to overrule same, which was done. In the other instance the remark complained of was, as is shown by the record, justified by testimony introduced and remarks made by counsel for the appellant. In addition, the objection urged against the same was simply: "We object to the remarks of the court and the remarks of the prosecuting attorney." In neither of these instances was the attention of the court called to the objectionable nature of the remarks so as to enable it to rule intelligently thereon. Under this state of facts the errors complained of are not preserved in such a manner as to authorize us to review them. If authorities are necessary to sustain this conclusion they will be found in the respondent's brief.

Finding no prejudicial error in this case, and there being no question as to the guilt of the appellant, the judgment of the trial court is affirmed, and it is so ordered. All concur, *Faris, P. J.,* in result.