State of Missouri, Respondent, v. Charlie Lawson, Appellant, No. 41661—227 S. W. (2d) 642.

Division One, February 13, 1950.

Motion for Rehearing or to Transfer to Banc Overruled, March 13, 1950.

*Wm. P. Elmer, E. W. Bennett* and *J. Dean Leffler* for appellant.

98

*J. E. Taylor*, Attorney General, and *Richard F. Thompson*, Assistant Attorney General, for respondent.

HYDE, J.—Defendant was convicted of murder in the second degree and sentenced to twenty-five years in the penitentiary. On his appeal, he contends that his motion for a directed verdict should have been sustained, arguing that the corpus delicti was not established.

Deceased, George McKinney, died after a fight with defendant but his argument is that the evidence does not show that he died from any wound caused by defendant. The fight took place near the Lenox store in Dent County. Deceased and his son were at Lenox when defendant arrived. Defendant and deceased "shook hands friendly" but defendant apparently confused him with his son who drove a school bus, and had slapped defendant's daughter when she was riding on the bus. Defendant started talking about this incident and deceased defended his son's action. Deceased tried to talk defendant out of making trouble about it, but defendant finally struck him and in the fight that followed defendant was severely beaten (his nose was fractured in five places) until other men pulled deceased off of him after he had knocked defendant down. Immediately after the fight defendant's nose was bleeding and his face was covered with blood. He appeared "a little bit addled" or dazed when he first got up and walked around. Defendant's left hand and arm had once been badly burned and he did not have much use of it but he was larger than deceased. A few minutes after this fight, deceased came over to defendant near the store and said: "Charley, I haven't a damned thing ag'in you, let's shake hands and forget it all." Defendant shook hands but witnesses differed as to whether or not he said anything. (One witness stated defendant said: "That will be all right with me.")

Deceased then went to his truck and sat down on the running board with his head down looking toward the ground. Defendant was moving around and had picked up some rocks (witnesses said he dropped a rock from his right hand when he shook hands with deceased) and then came up to the left side of deceased. According to the State's evidence, he took a rock out of his hip pocket and struck deceased with it on the left side of the head; then when deceased raised up part way he struck him again behind the ear. Deceased slumped down to the ground; his son, standing by the truck, caught him and laid him on the ground. Defendant was seen to drop a rock after he struck deceased.

The medical evidence consisted of the testimony of Dr. Randall of Licking, who saw the body before it was moved from the place where deceased fell, and Dr. Hart of Salem, who examined the body after it was brought there that evening. Dr. Randall said deceased had been dead from one-half to three-quarters of an hour when he saw him.

He found "two contusions where he had been hit on the left side of the head, one in the temple and the other behind the ear." He further stated that, from his examination, he formed the opinion that the cause of death "was one or both of the licks that he had been given on the side of the head." His opinion was based on the size and condition of the contusions he observed and the fact that he was oozing blood and serum from the nose, which he said "would lead you to believe that there was enough brain contusion" on the inside to cause it. Dr. Hart took seven X-ray pictures; he said that, from these pictures and his examination of deceased, that his opinion was that the cause of death was "a blow or blows on the head." He thought it more likely that death was caused by the blow behind the ear. The X-rays showed no skull fracture but he said it was difficult to find small fractures and that even an autopsy might not show anything because "you can have brain damage that you can't see that will kill a man."

Defendant argues that the State did not prove the cause of death to be a blow struck by him because the X-rays did not show a skull fracture, and because there was no autopsy to determine that there was hemorrhage of the blood vessels of the brain or other brain damage caused by the blows. Defendant says that the external head wounds described were not in themselves fatal or mortal wounds and, therefore, there was no evidence "establishing death was not due to natural causes induced by over exertion, over excitement, etc." The corpus delicti in murder consists of two elements, to wit: death of the person alleged to have been murdered and the criminal agency of someone causing his death. (State v. Lyle, 353 Mo. 386, 390 (2), 182 S. W. (2d) 530, 532 (2); State v. Payne, 331 Mo. 996, 1003 (2-3), 56 S. W. (2d) 116, 118 (2-5); State v. Meidle, (Mo.) 202 S. W. (2d) 79, 80 (5).) There was no question about the death of George McKinney and there was direct substantial evidence that defendant struck him twice on the left side of the head with a rock he took from his hip pocket. Both Doctors, who examined the contusions made by these blows, gave their opinions that these were the cause of death. There is nothing unreasonable or improbable about that. After all, we have it on high authority that the youthful David killed the giant Goliath with a rock which struck him on the forehead. (1 Samuel 17: 49-50.) We, therefore, hold that the State's evidence was ample to establish the corpus delicti and that the Court properly submitted the case to the jury.

Defendant also contends that there was no evidence of murder in the first or second degree, and that his conviction of second degree murder cannot be sustained. Since defendant was not convicted of first degree murder, it is unnecessary to consider that instruction. (State v. Jenkins, 327 Mo. 326, 332 (3), 37 S. W. (2d) 433, 435 (3); State v. Foster, 355 Mo. 577, 589 (7), 197 S. W. (2d) 313, 319 (12). ) As to second degree murder, defendant's argument is that "after the

severe beating and injuries defendant received (even though his fault), the anger, resentment and passion unconsciously aroused, or the unconsciousness resulting from the beating, under the law reduced the crime, if any, to manslaughter.'' Defendant cites State v. Gee, 85 Mo. 647, l. c. 649; State v. Grant, 152 Mo. 57, 53 S. W. 432; State v. Lane, 158 Mo. 572, 59 S. W. 965; State. v. Smith, 164 Mo. 567, 65 S. W. 270. These cases do not support defendant's contention. Manslaughter was submitted by a proper instruction. However, there was certainly ample evidence to support a finding that defendant acted wilfully, premeditatedly and with malice aforethought. The existence or non existence of malice ''determines whether the homicide is second degree murder or manslaughter.'' (State v. Ferguson, 353 Mo. • 46, 182 S. W. (2d) 38.) Malice and premeditation could reasonably be inferred from defendant's conduct in starting the fight, in picking up rocks thereafter and putting one in his pocket; and in coming up to deceased, after he had shaken hands with him and while he was sitting down looking at the ground, taking the rock out of his pocket and stricking him twice when he did not know defendant was near him and before he could get up. Intentional killing with a deadly weapon raises a presumption of murder in the second degree. State v. Hogan, 352 Mo. 379, 382 (1), 177 S. W. (2d) 465 (1); State v. Smith, 355 Mo. 59, 62 (1), 194 S. W. (2d) 905, 906 (1). We have held that a rock may be a deadly weapon when used to cause death. State v. Miller, 264 Mo. 395, 175 S. W. 187, l. c. 189; See also State v. Brinkley, 354 Mo. 1051, 193 S. W. (2d) 49; For definition of ''deadly weapon'' see also State v. Bowles, 146 Mo. 6, l. c. 13, 47 S. W. 892. However, it is not an essential element of murder in either degree that the killing be done with a deadly weapon, or any weapon at all; the crime may be committed with the fist. (State v. Rizor, 353 Mo. 368, 182 S. W. (2d) 525.) This case is somewhat similar to the Rizor case; but the proof of use of a weapon is much stronger. We, therefore, hold that the evidence was sufficient to support the conviction of second degree murder. Defendant further complains of the Court's failure to give his offered Instruction A submitting the offense of manslaughter. Without passing on the correctness of Instruction A, we hold that this was not prejudicial error because the Court did submit manslaughter in a proper instruction which more fully covered this offense.

▮ Defendant also alleges error in failing to exclude three photographs on defendant's objection when they were originally offered. These were photographs ▮▮ of the body of deceased in the position it was on the ground in front of the Lenox store, at the time the officers arrived. These pictures were shown to the jury but later two of them were withdrawn by the State and the other one was thereafter stricken by the Court. The substance of the original objection was that the pictures did not tend to establish any fact in

relation to the killing and were like the exhibition of bloody clothing. Defendant says they were gruesome and had a prejudicial effect on the jury. When the two pictures were withdrawn by the State, an additional objection was made that the conditions were not the same at the time the pictures were taken as they were at the close of the fight; that the body had been moved from the place where it fell; and that a rock which was shown had been moved and placed near the body. The rock was not specifically identified as the one used by defendant although there was evidence tending to so show. The record thereafter shows the following:

"The Court: Gentlemen of the Jury, the State's Exhibits C and D, which were two photographs that you gentlemen have looked at, have been withdrawn by the State and you are not to regard or consider in any respect State's Exhibits C and D.

"Mr Elmer: I would like for you to exhibit them to the jury so they will know what—

"The Court: All right, you may do that.

"Mr. Elmer: —what was withdrawn.

"The Court: Yes, that's right. You may let them see them so they will know.

"Whereupon Mr. Elmer exhibited to the jury State's Exhibits C and D, which were withdrawn from consideration of the jury.

"The Court: Is that sufficient, Mr. Elmer?

"Mr. Elmer: I think so."

Later the State offered to withdraw the other picture showing the body, Exhibit B, but defendant's counsel insisted that the Court strike it out. The following then occurred:

"The Court: All right, under the circumstances the exhibit will be stricken out. Now, are you asking that any statement be made to the jury?

"Mr. Elmer: Yes, sir, I will ask the jury be instructed to disregard all of these photographs except this one here,—* * * that is marked Exhibit A.

"The Court: Showing some buildings?

"Mr. Elmer: Showing the buildings.

"The Court: All right, gentlemen, all the photographs that have been heretofore admitted in this case except State's Exhibit A, which shows some buildings, are stricken out and you will not consider them in any way in making up your verdict; you will completely forget all of these photographs and what they show. Now, is that sufficient, Mr. Elmer?

"Mr. Elmer: I think that covers it."

We do not rule that it was error to admit these pictures. (See State v. Porter, 357 Mo. 405, 208 S. W. (2d) 240, 242 (1); State v. McDaniel, 336 Mo. 656, 669, 671 (2), 80 S. W. (2d) 185, 192, 193 (4-5). ) One of the pictures shows some indication of the contusions

on the left side of deceased's head which were material on defendant's contentions. Furthermore, the evidence shows only minor variations in conditions and there was no contention that deceased's truck, shown in one of the pictures, had been moved, so the body was still at the scene of the occurrence. We do not consider these pictures to be gruesome or inflammatory in effect. However, in any event, the Court, in finally instructing the jury to disregard them, did everything defendant's counsel asked and further inquired of them if the actions taken were sufficient. Defendant's counsel then said they were. We, therefore, hold that there was no prejudicial error in the handling of these photographs.

Defendant further alleges error in the refusal of the Court to require the State to make available to him a wire recording of conversations between defendant and the Prosecuting Attorney and police officers, and the questioning of defendant by them, taken the night defendant was brought to Salem after the death of deceased. This request was made at the close of the State's evidence. The State had not offered this recording, or any part of it, in evidence; nor had it offered any statement made or claimed to have been made by defendant. In fact, no statement of defendant to anyone, made after the occurrences at the Lenox store that afternoon, was offered in evidence, either in chief or in rebuttal, although defendant's principal arguments for hearing the recording was that the State might use such statements in rebuttal. Defendant then testified, as a part of his evidence at the trial, that he remembered the first fight with deceased and shaking hands with him after it ended, but said he did not remember striking him thereafter; and did not remember being taken home and treated for his injuries later that afternoon before he was arrested. He did not say whether or not he remembered being questioned that night. Dr. Hart, who examined and treated defendant before he was questioned, said that he seemed "dazed" and "acted rather stuporous, but he was not partially unconscious" and that defendant talked to him "rather intelligently." He told the Prosecuting Attorney that it was all right to question him. Defendant says he "moved the court to require the Prosecuting Attorney to produce and play it for the use of the defendant for the reason the same would show by conversation, accent and tones, the state of mind of defendant and support his claim he had no knowledge of his acts in striking McKinney as charged, and it was material to the defense." However, defendant did not ask to have this recording introduced in evidence but instead only desired to hear it out of court.

Even where written statements have been taken, but are not used in evidence, we have held that it was not error to refuse a defendant's request to see them, although officers present at the time testified to oral statements made by defendant while the written

statements were being prepared. (State v. Hancock, 340 Mo. 918, 926 (8), 104 S. W. (2d) 241, 246 (9); See also State v. Higdon, 356 Mo. 1058, 204 S. W. (2d) 754; State v. Colson, 325 Mo. 510, 30 S. W. (2d) 59; State ex rel. Page v. Terte, 324 Mo. 925, 25 S. W. '(2d) 459; State v. Richetti, 342 Mo. 1015, 119 S. W. (2d) 330.) In this case, the Court, at the time of overruling defendant's request, announced that, if the State offered in rebuttal any statements made by defendant, "ample time and ample opportunity" would then be given defendant to meet the situation. This was at least a matter of discretion and we hold that the Court did not abuse its discretion in so overruling this request made at that stage of the trial. Since the State did not use any statements of defendant made either in or at the time of the recording, we further hold that there was no prejudicial error against defendant. Our conclusion from the whole record is that defendant had a fair and impartial trial.

The judgment is affirmed. All concur.