## THE STATE v. GARRISON, Appellant.

### Division Two, February 7, 1899.*

1. **Dying Declarations.** The dying declaration of deceased in this case is held to have been made under a sense and an absolute conviction of the actual nearness of death; to have been entirely competent, and not fragmentary or irrelevant.

2. **Murder:** FLIGHT. Although the defendant may never have denied the killing as claimed by him, and although his guilt may be sufficiently proved by other evidence, yet evidence of his escape from jail and flight is competent, because flight by one charged with crime, in order to avoid arrest, raises a presumption of guilt.

3. ————: LOCUS CRIMINIS. Deceased was shot in Missouri, and died from his wounds in Kansas a few days later. *Held* that the murderer could be indicted and punished in Missouri.

4. ————: IN SECOND DEGREE. Where defendant was either guilty of murder in the first degree, or, according to his own testimony, was justifiable on the ground of self-defense or guilty of nothing more than manslaughter in the fourth degree, no instruction for murder in the second degree should be given.

5. ————: MANSLAUGHTER: THREATS. Defendant testified that deceased had a hatchet in his hand and said to him, "you damned son-of-a-bitch. I am going to chop your brains out with this hatchet," and advanced upon him with it drawn to strike. *Held*, that, if defendant then and there, under the excitement produced by the epithet and threats, shot and killed deceased, and if, but for the provocation produced by said epithet and threats the homicide would not have occurred, the defendant was guilty of nothing more than manslaughter in the fourth degree, and, with this testimony before the jury, defendant was entitled to an instruction to that effect.

*Appeal from Platte Circuit Court.*—HON. WILLIAM S. HERNDON, Judge.

REVERSED AND REMANDED.

*NOTE.—Decided December 20, 1898. Motion for rehearing filed; denied February 7, 1899.

State v. Garrison.

Roney & Chinn for appellant.

(1) The court erred in admitting and refusing to strike out the testimony of witnesses Whiteley and Dunagan, "That the place where the shooting occurred was within Platte county." That was a fact for the jury to find. (2) The court erred in admitting, over objections of defendant, the dying declarations, because no proper ground was laid, and because they were incompetent, irrelevant and fragmentary. (3) The court erred in admitting and in refusing to strike out the testimony of Sheriff Dillingham, "that defendant escaped from the jail of Platte county in September, 1897." Defendant had admitted the shooting from the moment thereof. (4) The indictment charged that defendant feloniously assaulted deceased. That fact was not submitted to the jury in any instruction. This was error. (5) Instruction 1 deprived defendant of the right of acquittal upon a doubt that might arise from the want of, or the insufficiency of, the evidence to warrant conviction. State v. Blue, 136 Mo. 44. (6) Instruction 3 is in such form as to be unintelligible, especially in defining "deliberation." There is no proper connection of the words, "passion suddenly aroused" and "just cause or provocation." State v. Petit, 119 Mo. 415; State v. Fairlamb, 121 Mo. 146; State v. Bell, 136 Mo. 120. The jury were not informed what would constitute "just cause or provocation" to justify or to mitigate the shooting. It is a question of law. State v. Jones, 20 Mo. 64. (7) Instruction 4 is erroneous, because it fails to inform the jury what expressions, epithets or acts of deceased would be a legal provocation sufficient to justify or to mitigate the shooting. State v. Jones, 20 Mo. 64; State v. Hickam, 95 Mo. 329. (8) The court erred in refusing the request of defendant to give instructions upon murder in the second degree, and upon manslaughter in the fourth degree, as appears by the bill of exceptions. State v. Wilson, 85 Mo. 141; State v. Bulling, 105 Mo. 221.

EDWARD C. CROW, Attorney-General, and SAM B. JEFFRIES, Assistant Attorney-General, for the State.

(1) The dying declarations of the deceased were shown to be both competent and proper before they were offered. 1 McClain's Crim. Law, sec. 425; 1 Bishop's Crim. Pro., sec. 1207; 1 Greenl. on Ev., sec. 156; Mattox v. U. S., 146 U. S. 140; Com. v. Roberts, 108 Mass, 296; Com. v. Sullivan, 93 Pa. St. 284; People v. Knapp, 26 Mich. 112; State v. Pulliam, 88 Ala. 1; State v. Johnson, 118 Mo. 491. (2) No error was committed or wrong inflicted upon the defendant by the refusal of the court to strike out the testimony of Whiteley and Dunnegan to the effect that the offense was committed within the county of Platte. Matters of county boundary are such as the court will take judicial notice of. The witnesses having shown that they were well acquainted with the country, had a right to testify as to their knowledge of matters affecting the boundary of the State at the date of the offense. (3) Objection is also made to instructing the jury upon the question of flight and the reason for defendant's objection is that he admitted having killed the deceased, but did it in self-defense, and for that reason defendant should not be called upon to explain his flight. The fact of his admission does not exempt him from being responsible for the presumption created in law, that he was guilty of the charge preferred against him in the indictment. (4) As to the instructions offered by defendant, it will be noticed upon a comparison that the points offered were fully instructed upon by the court upon its own motion, except upon the question of murder in the second degree, and upon this proposition we submit that the evidence discloses nothing upon which to warrant an instruction of that character.

BURGESS, J.—At the December term, 1897, of the circuit court of Platte county, defendant was convicted of murder in the first degree, for having theretofore, in December,

1896, at said county shot to death with a pistol one Frank Allrick.

After unsuccessful motions for new trial and in arrest, defendant appeals.

At the time of the homicide the deceased Frank Allrick lived on an island in the Missouri river. Prior to that time he and defendant had been working on a dyke in the river bottom for one Shillings under the direction and supervision of one Albert Arnold. Some time before the homicide defendant had purchased a horse from deceased, for which he agreed to pay him $10 in work. He paid off this debt with the exception of $1.75, when deceased discharged him, over which they had a quarrel.

On the morning of the difficulty, December 17, 1896, but before the homicide was committed, deceased and defendant engaged in a rencounter in which they exchanged shots, but neither of them was injured. Arnold then discharged defendant and paid him off, after which he asked Arnold if he could not return to work provided he and Allrick made it all right with each other. Arnold acceded to this proposal, and that evening defendant called upon Allrick and renewed friendship with him. It was then agreed between them that Arnold should pay deceased the $1.75 out of defendant's wages as soon as earned.

After this arrangement was made Allrick invited defendant to accompany him home, which he did, and on arriving at the house Allrick secured a hatchet and was in the act of nailing a board on his house when, the evidence upon the part of the State showed, defendant without any warning took a revolver from his pocket and fired at him. That when the first shot was fired, Allrick turned to run, and defendant then fired another shot which penetrated the left side of the abdomen of Allrick just above the hip bone, and passed through the intestines to the right side of the body, from the effects of

which he died at Leavenworth, Kansas, within two or three days next thereafter.

Defendant testified in his own behalf as follows: After I had gone with deceased to his house and started away, deceased asked me where I was going and I told him I was going back to Mrs. Butler's, and then Allrick said, go back and stay all night with me and you won't have to pay that board. I then said I don't propose to pay much board, I said I will go, and he said, "You damned son-of-a-bitch, I am going to chop your brains out with this hatchet," and he started at me with the hatchet, I ran back a little piece, I put my hand in the pocket I had the pistol, and fired one shot before I got it out, I don't know if it went off before I pulled it out or about the time, and after I got it raised I fired another shot and he took towards Mr. Arnold's house. He throwed the hatchet at me and I shot about the time it left his hand.

The homicide was committed near the State line between Missouri and Kansas, and there was some question as to which State it was committed in.

The court instructed for murder in the first degree and for self-defense, and refused instructions asked by defendant for murder in the second degree, and manslaughter in the fourth degree.

Counsel for defendant raise and discuss a great many points in their brief but only those which seem to us to be meritorious will be considered.

1.   The first assignment of error is that the court erred in admitting and in refusing to strike out the testimony of witnesses for the State, Whiteley and Dunagan, that the place where the shooting was done was within Platte county. This testimony was admitted without objection from defendant, although he afterwards moved to strike it out. The motion was, however, overruled. But even if the objection had been timely made the evidence was not of sufficient importance to justify a reversal of the judgment upon that ground,

even though error was committed in admitting it, which we are unwilling to concede. It is a common practice for prosecuting attorneys to ask witnesses for the State in what county the offense being investigated was committed, and certainly no reversible error is committed in so doing. It would be impracticable to proceed otherwise. Beside the defendant had the right to cross-examine the witnesses with respect to such statements had he desired to do so, and in that way ascertain the grounds upon which the statements were made.

2. On the nineteenth day of December, 1896, deceased made a dying declaration that was reduced to writing and signed by him, in which he stated that he had no hope of recovery, that Frank Garrison shot him with a pistol about five o'clock, p. m., on Thursday, the seventeenth of December, close to his shanty on Stigers island. That he nailed a piece of board on his shanty, and he (Garrison) said to him, "You will not stay here to-night," to which he said, "Why?" and defendant replied, "I will kill you," and shot him in the side and ran. That (Garrison) shot four times at him. He also stated that he did not offer or threaten to do anything to Garrison just before or at the time of the shooting; that he made no threats against him, nor did he go towards him or offer to hit him with the hatchet.

When the dying declaration was offered in evidence defendant objected upon the ground that no proper ground was laid for its admission, and because incompetent, irrelevant and fragmentary, which objections were overruled. It is now insisted by him that error was committed in admitting it in evidence over his objections.

The dying declaration was not only made by deceased under a sense of the actual nearness of death, but there was an absolute conviction of it in his mind.

He had no hope whatever of recovery at the time he made it, and died the next day thereafter. The case comes

clearly within the rule announced in State v. Johnson, 118 Mo. 491, and authorities therein cited.

It would be difficult to find a stronger case, or one which comes more clearly within the rules of law with regard to the admissibility of such evidence. Nor was it irrelevant or fragmentary.

3. No error was committed in refusing to strike out the testimony of the witness Dillingham to the effect that the defendant escaped from the jail of Platte county in September, 1897, although defendant may have never denied the killing as claimed by him. The State was not restricted to any one mode or line of evidence in proving its case, and in so doing had the right to resort to any legal evidence at its command, and as flight by a person guilty of crime in order to avoid arrest always raises a presumption of guilt, such evidence was properly admitted for that purpose, notwithstanding his guilt might have been sufficiently proved by other evidence. [State v. Marshall, 115 Mo. 383; State v. Brooks, 92 Mo. 542; State v. King, 78 Mo. 555; State v. Walker, 98 Mo. 95.]

4. There is no merit in the contention that the court committed error in failing to submit to the jury whether or not the killing was feloniously done, as that question was not only submitted to the jury by the second instruction given on behalf of the State, but it was properly defined by the State's third instruction.

5. The first instruction given on behalf of the State is criticised upon the ground that it deprived defendant of the right of acquittal upon a doubt that might arise from the want of, or the insufficiency of, the evidence to warrant a conviction. In support of this contention he relies upon State v. Blue, 136 Mo. 41. But as we said in State v. Duncan, 142 Mo. 456, "there is a very material difference between the instruction upon reasonable doubt in the Blue case, and the one now under consideration, as a comparison will show. In that

case reasonable doubt was defined as being a 'substantial doubt growing out of and consistent with the evidence,' while in this case it is defined as 'a substantial doubt of defendant's guilt, with a view to all the evidence in the case; and not a mere possibility of defendant's innocence.' "   As was said in that case:   "It is true that a reasonable doubt may arise from the want of sufficient evidence of criminative facts to establish guilt, but this instruction did not impose upon defendant the burden of proving his innocence, and when taken as a whole, no one of ordinary intelligence could infer from it that defendant was guilty beyond a reasonable doubt, because there was no evidence of his innocence."   See, also, State v. Sacre, 141 Mo. 64.

6.   The third instruction given on the part of the State is also criticised upon the ground that it is unintelligible, especially in defining "deliberation," and that it does not properly connect the words "passion suddenly aroused" and just cause or provocation.

It seems unnecessary to say more with respect to this instruction, than that it is in substantial compliance with repeated rulings of this court, and free from substantial objection.   [State v. Fairlamb, 121 Mo. 146; State v. Wieners, 66 Mo. 13; State v. Avery, 113 Mo. 475; State v. Andrew, 76 Mo. 101; State v. Ward, 74 Mo. 253; State v. Ellis, 74 Mo. 219; State v. Stephens, 96 Mo. 637.]

7.   While the wound which caused the death of Allrick was inflicted in this State, and he died in the State of Kansas, it is well settled that the courts of the State where the mortal wound is inflicted may indict and punish the criminal.   [Green v. State, 66 Ala. 40; People v. Gill, 6 Cal. 637; State v. Bowen, 16 Kan. 475; State v. Kelly, 76 Me. 331; Com. v. Macloon, 101 Mass. 1; Tyler v. People, 8 Mich. 342; State v. Gessert, 21 Minn. 369; Riley v. State, 9 Humph. (Tenn.) 657; U. S. v. Guiteau, 1 Mackey's Rep. (D. C.) 498.]

The objection to the State's fourth instruction upon this theory of the case is wholly without merit, and its fifth instruc-

tion is in accord with the rule announced by this court in Rees v. McDaniel, 115 Mo. 151, and not obnoxious to the objections urged against it.

8. The objection urged against the State's sixth, tenth, fourteenth, fifteenth and sixteenth instructions are extremely technical, and barren of any grounds upon which to bottom them.

9. The action of the court is also criticised in refusing the eighteenth, nineteenth, twentieth, twenty-first, twenty-second, twenty-third, twenty-fourth, and twenty-fifth instructions asked by defendant. These instructions were properly refused, either because they did not contain a correct presentation of the law as applicable to the case at bar, or because the questions presented by them were covered by other instructions which were given.

10. The only remaining question for consideration is with respect to the action of the court in refusing at defendant's request to instruct for murder in the second degree, and manslaughter in the fourth degree.

There was nothing disclosed by the evidence to justify an instruction for murder in the second degree, but under defendant's testimony he was either justified in the killing upon the ground of self-defense or was guilty of nothing more than manslaughter in the fourth degree, because done in the heat of passion aroused by lawful provocation.

In 2 Bishop's New Criminal Law, section 704, it is said: "Where there is a demonstration of impending present violence, yet insufficient alone, accompanying words, added to the physical acts, may disclose such peril as will justify the killing of the aggressor, or reduce it to manslaughter. And it appears that there may be circumstances wherein, though the demonstration does not directly import coming violence, still it and the words combined, may so excite the passions as to reduce the killing to manslaughter."

So in State v. Wilson, 85 Mo. 141, SHERWOOD, J., in speaking for the court, said: "While mere threats are not sufficient to palliate a homicide, yet when they occur as a part of the *res gestae,* and are uttered while making an attempt on the life of the person threatened, they may be worthy of consideration, as tending, in connection with such attempts, to lower the grade of homicide when perpetrated by the person threatened."

Now if deceased had in his hand a hatchet and said to defendant, "You damned son-of-a-bitch, I am going to chop your brains out with this hatchet," and advanced upon him with it drawn to strike, and then threw it at defendant, and defendant then and there shot and killed him under the belief, with good reason. that it was necessary for him to shoot deceased to save his own life, or to protect himself from danger of great bodily harm at the hands of deceased, it was excusable homicide; but if the homicide was committed under a less degree of fear and in the excitement produced by the epithet and threats of deceased, and if, but for this provocation, the shooting would not have occurred, he was guilty of nothing more than manslaughter in the fourth degree, and the court should have so instructed the jury, and for its failure to do so we reverse the judgment and remand the cause.   GANTT, P. J., and SHERWOOD, J., concur.