STATE of Missouri, Respondent,

v.

Louis TAYLOR, Appellant.

No. 46034.

Supreme Court of Missouri,
Division No. 1.

Feb. 10, 1958.

Louis Taylor, appellant, pro se.

John M. Dalton, Atty. Gen., Russell S. Noblet, Asst. Atty. Gen., for respondent.

VAN OSDOL, Commissioner.

Defendant Louis Taylor, charged with murder in the first degree, was found guilty of murder in the second degree and his punishment was assessed at forty years' imprisonment in the penitentiary. He has appealed from the ensuing judgment.

Defendant-appellant had made seven assignments of error in his motion for a new trial, and, herein, now contends eight errors of the trial court. The basic contentions are that the evidence did not justify the submission of defendant's guilt of murder, and that instructions submitting the issue of his guilt of murder in either degree were, therefore, erroneously given. These assignments and contentions require a statement of the evidence tending to support the submission.

The State introduced evidence tending to show that one Fred Dotson lived in a small house of two rooms near the city dump south of Rolla. From time to time defendant Taylor, one Ralph Bailey, and deceased, William Burris, stayed at the Dotson house where, during the night of December 14 and the morning of December 15, 1955, a drunken brawl and fatal fight occurred in the south room of the house.

The outside door of the south room is in the south end of the room and, on the night of December 14th, there was a mattress on the floor at the southwest corner of the room. North of the mattress and against the west wall was a table with teakettle, a kerosene lamp, and other articles thereon; and in the northwest corner of the room there was a studio couch which was extended so as to form a double bed. There also was a cot or day bed in the southeast corner of the room, and north of the cot was a stove.

Fred Dotson testified that he and Bailey usually slept on the studio couch at the northwest corner of the room and that defendant Taylor and deceased had been sleeping on the cot and mattress. During the night of December 14th, Burris came to the Dotson house and entered the south room after Dotson, Bailey and defendant had gone to bed. Defendant was lying on the cot, and Burris "got in on the mattress." Defendant walked over and "commenced fighting" Burris. Defendant was "hitting him with either a stick of wood or stove shovel." Dotson was afraid to interfere—he said, "Taylor told me if I didn't keep my mouth shut that he would give me some of it." The fight lasted two or three hours. Following the fight Burris was lying on the mattress; he "kept groaning and taking on," and defendant threw him out of the house and poured water on him. A few minutes later defendant dragged Burris back into the house and poured kerosene on him; defendant said he was "going to set him afire." At about seven o'clock the next morning defendant left the Dotson house and went to the home of Dotson's neighbor, one Bone. While at the Bone home defendant said he was going back to the Dotson house and kill Burris.

A witness, one Heflin, testified that he went to the Dotson house early in the

morning of the 15th. Dotson and Bailey were lying on the studio couch. Defendant was standing in the middle of the floor "swearing at Bill Burris" who was lying on the mattress. Defendant said, "'I oughta kill him. * * * I think I'll kill him.'" Defendant walked back and forth, and finally stepped up on the mattress and "stomped" Burris on the face and neck. Defendant also threw sticks of wood at Burris.

A merchant at Rolla testified that at nine or nine-thirty o'clock in the morning of December 15th defendant came to the witness' store and said, "'I killed Bill Burris * * * beat him to death,'" or "'I hope I did, I left him out there for dead.'" Defendant told the witness that he (defendant) had done what he did to Burris "'for what Burris did to Fred (Dotson) in your store here yesterday, trying to get those groceries.'" (There was evidence tending to show that sometime during the day of December 14th Burris had come to the witness' store and sought to procure some groceries that Dotson "was supposedly to have sent him after.") December 14th, just about dark, defendant had said to another witness, "'Hard telling what might happen down there for what he (Burris) had done.'"

Officers arrived at the Dotson house in the early afternoon of December 15th. Burris was lying on the mattress; he was unconscious, and died within a few minutes after he was hospitalized. A post-mortem examination disclosed numerous bruises, lacerations and abrasions; and there was a large swelling on the left upper front side of the head. When the skull was opened, the pathologist observed a large quantity of clotted blood between the dura and the tissues of the brain. The pressure of the subdural hemorrhage was the immediate cause of death. The hemorrhage could have been caused by a severe blow on the head, or any form of violence.

■ As we have said, defendant-appellant contends the trial court erred in submitting the issue of defendant's guilt of murder in either degree. It is urged that, at best, the State's evidence was substantial and sufficient only in justifying the submission of defendant's guilt of manslaughter. Since defendant was found guilty of murder in the second degree, it is unnecessary to consider the submission of first-degree murder. State v. Jenkins, 327 Mo. 326, 37 S.W.2d 433. And we bear in mind that the existence or nonexistence of malice determines whether a homicide is murder in the second degree or manslaughter. State v. Ferguson, 353 Mo. 46, 182 S.W.2d 38; State v. Lawson, 360 Mo. 95, 227 S.W.2d 642.

In considering the sufficiency of the evidence in tending to justify the submission or to support the conviction of murder in the second degree, we shall accept as true the evidence introduced which was favorable to the State and the favorable inferences reasonably to be drawn therefrom.

■ Intentional homicide with malice aforethought could be reasonably inferred from the State's evidence introduced in the instant case, particularly the evidence tending to show defendant's conduct in starting the fight, in striking and beating deceased with a stick of wood or a shovel or the fist intermittently throughout several hours, and in "stomping" him when he was lying prone on the mattress, during some of which time the deceased was in an unconscious or semiconscious condition. We particularly note the evidence tending to show the statements of defendant indicating there was bad feeling on the part of defendant toward deceased and that defendant had done "what he did to Burris" because Burris apparently had attempted to procure groceries to be charged to Dotson's account. Testimony of statements made by defendant in the late afternoon of December 14th, before the fight, and in the morning of December 15th, after the occurrences of the preceding night, was indicatory that prior to the fight defendant entertained a preconceived malicious design to kill. Nor was it fatal to the substantiality

of the State's case that the evidence did not definitely tend to show by what specific means defendant struck the fatal blow. A stick of wood or a shovel may be a deadly weapon when used to cause death, and it is not an essential element of murder in either degree that the killing be done with a deadly weapon, or any weapon at all; the crime may be committed with the fist. State v. Lawson, supra; State v. Rizor, 353 Mo. 368, 182 S.W.2d 525.

■ We have the opinion that the State's evidence was substantial in tending to show that the homicide was committed intentionally and with malice aforethought, and that the trial court did not err in submitting the issue of defendant's guilt of murder in the second degree to the jury.

■ Defendant–appellant further contends the trial court erred in failing to give an instruction on manslaughter; and it is true that, if there was substantial evidence tending to show lawful provocation, defendant was entitled to such an instruction whether or not he requested it. State v. Creighton, 330 Mo. 1176, 52 S.W.2d 556; State v. Porter, 357 Mo. 405, 208 S.W.2d 240; State v. Edwards, Mo.Sup., 226 S.W.2d 592. Where there is lawful provocation, the law, out of indulgence to human frailty, will reduce the killing from the crime of murder to manslaughter. As stated, malice is an essential ingredient of murder; and, although intentional, a homicide yet may be manslaughter, if without malice, as where one kills in a transport of sudden passion aroused by lawful provocation. But "neither words of reproach, how grievous soever, nor indecent provoking actions or gestures, however much calculated to excite indignation or arouse the passions, are sufficient to free the party killing from the guilt of murder. To have the effect to reduce the guilt of killing to the lower grade, the provocation must consist of *personal violence*." (Our italics.) State v. Starr, 38 Mo. 270. See also State v. Edwards,

supra; and State v. Smith, Mo.Sup., 240 S.W.2d 671, and cases therein cited. Where the evidence is substantial in tending to show personal violence, that is, tending to show a battery—violence to a person—initially inflicted upon the slayer by the deceased at the time of the homicide, the general rule is that a manslaughter instruction is called for; and this is true though the evidence consists of testimony of the defendant alone. Violence to the person is the standard exacted by the law as affording the basis for the inference of that heat of passion which reduces the grade of the crime in a homicide case from murder to manslaughter. State v. Creighton, supra; State v. Littlejohn, 356 Mo. 1052, 204 S.W.2d 750.

As we have said, we have the opinion that the evidence considered from a standpoint favorable to the State was amply sufficient in supporting the submission and a conviction of murder in the second degree, yet we bear in mind that the jury was not obliged to believe the testimony of the State's witnesses tending to show that defendant, without provocation, initiated the fight, but could give credence to defendant's own testimony that he struck and fought deceased only after deceased had struck him.

Defendant testified in his own behalf. He stated that when he, Bailey and Dotson were in bed at the Dotson house Burris came in; Burris was drinking, and was "beat up" when he came in. All four men were drinking and arguing and "Burris started on me"; it was just a drunken fight; Bailey was in it too. Burris was fighting Bailey "on the first, before I got down there; when I got down there. * * * Bailey, he went over and laid down. Burris jumped onto me then." Defendant testified he got into the fight because "Burris struck me, hit me over the head there (indicating) * * *." Again defendant testified that Burris "struck me first"; that he fought with Burris "after he struck me first." Defendant denied that he had "stomped" Burris; denied making the statements at the Bone house; and

denied making the statements other witnesses for the State had attributed to him. He struck Burris only with the fist, although he said that once during the fight he threw a stick of wood at Burris but missed.

Distinguished counsel for the State argues that no evidence introduced by the State supported any inference that defendant was acting "under any undue excitement or emotion, or heat of passion"; and that defendant's own testimony conclusively shows there was the intent to kill and without the influence of sudden passion induced by deceased. State's counsel refers to the testimony of the State's witnesses that defendant had "stomped" deceased; that, after defendant had left the Dotson house in the morning of the 15th, he said he wanted to go back and finish killing Burris; and that defendant kept beating Burris long after Burris struck defendant. It is also urged by the State that defendant's own testimony shows that he entered into the encounter while Bailey and Burris were fighting on the mattress. Reference is made by the State to defendant's testimony that Bailey was fighting deceased "on the first, before I got down there; when I got down there"; and that when defendant "got down there * * * there was a fight." But the jury reasonably could interpret "got down there" as meaning when defendant "got down" to the Dotson house or when defendant "got down" from the studio couch. The jury reasonably could have believed that Burris was not "down" on the mattress or floor during the early stages of the fight. We note that defendant said that Bailey "went over and laid down," and that "Burris jumped onto me then." Defendant got into the fight "after he (Burris) struck me first * * * hit me over the head there * * *." Defendant denied prolonging the fight after the initial though extended encounter, denied "stomping" deceased, and denied the statements witnesses for the State had ascribed to him.

■ In treating with the contention that defendant was entitled to an instruction on manslaughter, it is again said defendant was entitled to the benefit of the most favorable inference that reasonably could be drawn from any part of the evidence introduced. State v. Creighton, supra. The position of the State in the instant case is somewhat like that of the State in State v. Brinkley, 354 Mo. 1051, 193 S.W.2d 49, 56, where the question was of error in failing to instruct on the defenses of justifiable and excusable homicide. It was contended by the State that no substantial evidence was introduced which would support such instructions. It was urged that, as to those defenses, defendant had "outlawed himself" by kicking the deceased to death as he lay prostrate on the ground. Said this court, "If that testimony could be accepted as conclusively true, we might agree with the learned Assistant Attorney General. But appellant denied it and otherwise brought himself within several of the provisions of both statutes. In this situation it cannot be denied that he was entitled to instructions on justifiable and excusable homicide as against second-degree murder, insofar as his testimony tendered an issue thereon."

■ We hold that the trial court erred in failing to give an instruction on manslaughter.

■ Defendant-appellant makes the additional contentions of error in excluding testimony that the "deceased had a bad reputation for peace and quiet"; and in excluding testimony that Dotson, who, defendant-appellant says, was originally charged jointly with defendant, "had made recent threats against the deceased." Our careful search of the transcript on appeal discloses no proffer of such testimony. Defendant-appellant's contention in his brief that he was prejudiced by his inability to produce a material witness was not set forth in his motion for a new trial. Section 547.030 RSMo 1949, V.A.M.S.; Supreme Court Rule 27.20, 42 V.A.M.S. 119. And defendant's assignment that the "verdict is against the weight of the evidence"

did not preserve any question for review. State v. Rohman, Mo.Sup., 261 S.W.2d 69.

The judgment should be reversed, and the cause remanded.

It is so ordered.

COIL and HOLMAN, C.C., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.