**STATE of Missouri, Respondent,**

v.

**J. C. FLETCHER, Appellant.**

No. 46460.

Supreme Court of Missouri,

Division No. 1.

Feb. 9, 1959.

No attorney for appellant.

John M. Dalton, Atty. Gen., James E. Conway, Asst. Atty. Gen., for respondent.

HYDE, Presiding Judge.

Defendant was convicted of murder in the first degree, for the killing of Nathan Keller, on April 8, 1956, and sentenced to imprisonment for life in the penitentiary. He has appealed from this judgment and sentence. However, defendant's motion for new trial, which was overruled by the trial court, is insufficient to preserve for appellate review any rulings on evidence, instructions or procedural matters, because there are no grounds set forth therein in detail and with particularity concerning such matters. Rule 27.20, 42 V.A.M.S.; State v. Burks, Mo.Sup., 257 S.W.2d 919. Defendant (for whom the trial court appointed a lawyer) was permitted to appeal as a poor person, with a complete transcript provided for him by the State. We have examined the record as required by Rule 28.02 and find no error respecting the sufficiency of the information, verdict, judgment and sentence.

The only other matter we will consider is whether the evidence was sufficient to make a case for the jury. Defendant had come to Kansas City from Long Branch, Texas. He was 24 years of age and married; and at the time Mr. Keller was killed he was unemployed. The State had evidence to show the facts hereinafter stated. Early Sunday morning, April 8, 1956, defendant and Joe Graham, also known as Joe Phillips, came to the apartment of

Lonnie Ross at 2627 East 29th Street. Defendant was very tall and Graham was short and known as "Little Joe." Ross also came from Long Branch, Texas, and had been with defendant and Graham on the previous Friday night, April 6th, at a tavern where he, Ross, had engaged in a fight in which he used a pistol belonging to Joe Graham and had shot and wounded one of the participants with this pistol. On Sunday morning, April 8th, while at the Ross apartment, defendant and Graham took off the coats they were wearing and changed to coats owned by Ross. (It was shown that the purpose of this was to make it more difficult to identify them.) Graham put on a brown leather coat and defendant put on a gray suit coat, and they left the Ross apartment together. A man they knew, L. B. Lewis, saw them around 8:30 a.m. on Prospect Avenue and at defendant's request took them in his car to 30th and Park. Lewis had taken defendant home before, near 25th and Olive, so he inquired if defendant had moved. Defendant said: "You will often wonder, but you will never know."

Keller operated a grocery store at 31st and Brooklyn. Defendant and Graham walked there after getting out of Lewis' car, arriving there about 9:00 a.m. On the way Graham picked up a piece of tree limb, about 8 inches long, gave it to defendant and told him to put it in his pocket and make out like it was a gun. They found Keller checking groceries for a woman customer when they entered, and Graham took a grocery cart and put some groceries in it, while defendant followed him. As the woman customer left, Graham called to Keller to ask him where toilet paper was and Keller came back and showed him. When Keller walked back to the front of the store, Graham followed him and put his pistol against his back. Keller turned, saw the pistol and "started screaming, waving his arms around, and jumping up and down." Defendant heard the gun fired, saw Graham run out the door and he followed him, passing Keller

who also came out but fell on the sidewalk. Keller was taken to the hospital but was found dead there. Graham escaped, and had not been found at the time of defendant's trial; but before he left Kansas City, on the afternoon of that same day, he pawned a .38 caliber revolver with the owner of the tavern in which he had been with Ross on Friday night. It was shown that the bullet that killed Keller and the bullet that wounded the man fighting with Ross on Friday were both fired from the same gun.

A confession made by defendant the next day, April 9, 1956, stated that Graham told him on Sunday morning that he was going to get some money; and when defendant asked him how, he said "that he was going to stick somebody up." The confession also stated that defendant said Graham told him before they left the apartment "what place he had in mind to hold up" and that he agreed to go with him on this holdup. It further stated that after the holdup Graham called defendant twice by telephone and threatened him (to kill him) if he squealed on him. Ross testified that defendant afterwards stated that "on that Sunday morning he went up to this grocery store with the intention to rob this guy, and said he walked in and the man was carrying some merchandise in, had his boxes in his arm, said Joe walked up and stuck a gun in his ribs, and said, 'Stick them up,' and said the man was shaking and shivering, and dropped the box, and before he dropped the box, Joe just shot him, boom—trigger happy."

Defendant was the only defense witness. He said he only went to the third grade in school and could sign his name but could not read nor write. His confession was in question and answer form on three pages, the last page being signed and the first two initialed. Defendant said he signed all three pages of the statement he made, after it was read to him, and had not placed initials on the first two pages of the statement produced in court. (The first two pages were the ones on which defend-

ant's answers stated his voluntary participation.) The State's evidence, by the officers present at the time, was that all three pages were as defendant answered the questions asked. Defendant in his testimony at the trial said he thought Graham was going to 30th and Park to look for an apartment for a girl he had brought with him that morning to the ·Ross apartment. (Other evidence indicated that the purpose of the holdup was to get money to pay for an apartment.) Defendant said, when they got within 20 feet of the grocery store, Graham told him he was going to stick up some one and that when defendant said "not with me," Graham said, "if I go myself you are going to squeal on me, you are going." He said Graham took out his pistol, cocked it and made him go in front of him, after handing him a stick and telling him "take this stick and make out like you got a gun." Defendant said Graham had the gun, cocked in his pocket, all of the time they were in the store and threatened to shoot him if he got him in trouble. He said: "There was no way for me to get out that I could see"; and he described the shooting of Keller substantially as stated in his confession. He also said that after the shooting Graham again pulled the gun on him, told him to get away from there and threatened to shoot him if he did not.

The court gave an instruction submitting defendant's theory of defense, stating in part, "if you believe the defendant was threatened and forced by another with violence if he did not commit the crime, and if you find he had reason to believe that he would be killed or suffer great bodily harm unless he committed the said crime, then you should find the defendant was forced to commit said crime against his will and you should find him not guilty." This issue was for the jury, and if they believed the State's evidence, a verdict of guilty was proper because we must hold that the State produced substantial evidence to show that defendant voluntarily participated in the robbery, knowing Graham

intended to use a pistol to put the owner in fear and force him to give up the money on hand. Defendant did not testify that he ever told the police he had been forced by Graham to accompany him. While he indicated that the first two pages of the confession read in evidence were not the pages he had signed, he did not say what he told the police, if anything, that was different from the answers to the questions set out in that confession. Neither did he give any explanation as to why he never stated to them the version he gave at the trial. Of course, under the State's evidence, defendant was equally guilty with Graham. See Sections 556.170 and 556.190 RSMo 1949, V.A.M.S.; State v. Chernick, Mo.Sup., 278 S.W.2d 741; State v. Stidham, Mo.Sup., 305 S.W.2d 7; State v. Butler, Mo.Sup., 310 S.W.2d 952. It appears from this record that defendant had a fair trial and that the evidence was sufficient to support the verdict.

The judgment is affirmed.

All concur.