STATE of Missouri, Respondent,

v.

Lora Johnson HAYNES, Appellant.

No. 47274.

Supreme Court of Missouri,
Division No. 1.

Nov. 9, 1959.

Motion for Rehearing or to Transfer to
Court en Banc Denied Dec. 14, 1959.

James Daleo, Jack L. Simms, Thomas F. Conway, Kansas City, for appellant.

John M. Dalton, Atty. Gen., Calvin K. Hamilton, Asst. Atty. Gen., for respondent.

DALTON, Judge.

Defendant has appealed from a conviction of murder in the second degree and a sentence of 15 years' imprisonment in the state penitentiary. Two assignments of error are presented. The first is that the information is insufficient to charge an offense and the second is that the trial court erred in not instructing on manslaughter.

As to the first assignment, appellant says the amended information is not "a plain, concise, definite statement of the essential elements of the offense attempted to be charged, as required by Supreme Court Rule 24"; and that it does not "fully inform the appellant of the special character of the charge she was required to defend against, nor is same sufficiently specific to stand as a bar against a further prosecution for the same alleged offense."

Appellant directs attention to that portion of the amended information which reads as follows: " * * * that Lora Johnson Haynes * * * on the 25th day of August, 1957, at the County of Jackson, State of Missouri, did then and there wilfully, feloniously, premeditatedly, deliberately and of her malice aforethought make an assault upon one Bertha Ernestine Moten with a dangerous and deadly weapon, towit, a revolving pistol loaded with gunpowder and leaden balls, then and there inflicting upon the said Bertha Ernestine Moten a mortal wound, and that from said mortal wound the said Bertha Ernestine Moten within one year thereafter, towit, on the 25th day of August, 1957, at the County of Jackson and State of Missouri, died; * * *."

As stated, appellant says that this information does not contain "a plain, concise, definite statement of the essential facts constituting the offenses of first degree murder or second degree murder." She insists that it "is rambling, indirect, disconnective, devious, and is anything but plain"; that "it starts out by alleging an assault and ends up by alleging the death of the deceased, but nowhere states that the deceased was shot by the defendant," nor "that Mrs. Moten died from a gunshot wound"; and that such facts are "left to inference." Appellant further says " * * * the Amended Information does not charge Mrs. Haynes with *shooting* Mrs. Moten and does not even state that the infliction of the 'mortal wound,' howsoever caused, was wilfull, felonious, *premediated*, deliberate and of malice aforethought"; that the amended information charges Mrs. Haynes with inflicting a mortal wound upon Mrs. Moten, but does not state how the pistol was used, whether as a bludgeon or for shooting; and that it describes the wound as "mortal" but does not say whether it was caused by a blow or by a gunshot, or state how the death of the deceased was accomplished. Appellant concludes with the statement that "the method and means by which the death of the deceased was effected was not only not plainly and concisely charged, but was not set forth at all."

Appellant cites Supreme Court Rule 24.01, 42 V.A.M.S.; State v. Reynolds, Mo. App., 274 S.W.2d 514; Ex parte Keet, 315 Mo. 695, 287 S.W. 463; State v. Stringer,

357 Mo. 978, 211 S.W.2d 925; State v. Birks, 199 Mo. 263, 97 S.W. 578 and State v. Finn, Mo.Sup., 243 S.W.2d 67. None of these authorities support the conclusion that the information in this case is insufficient to charge the offense of murder in the first degree or to include murder in the second degree, the offense of which appellant was convicted.

Supreme Court Rule 24.01, in part, provides that "the indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. * * * It need not contain a formal commencement, a formal conclusion or any other matter not necessary to such statement. * * *"

Supreme Court Rule 24.03, in part, provides: "When an indictment or information alleges the essential facts constituting the offense charged but fails to inform the defendant of the particulars of the offense sufficiently to prepare his defense, the court may direct or permit the filing of a bill of particulars. * * *" And see State v. Bright, Mo.Sup., 269 S.W.2d 615, 619(1).

■ No such motion or request for a bill of particulars was filed on the part of defendant in this case and, in the trial of the cause, defendant testified in her own behalf that (on the day in question, at the place in question and under circumstances stated by her in her testimony) she fired the shot that killed Mrs. Moten. She further testified that she pointed the gun in question at Mrs. Moten, when six or seven feet from her, and pulled the trigger; and that she didn't, thereafter, stop to see what happened to Mrs. Moten. In view of defendant's own testimony it is apparent that defendant could not have been misled or prejudiced by the failure of the information to allege that defendant "did discharge and shoot off" the said weapon, nor was it necessary for the amended information to more particularly allege the exact method and means by which the death of deceased was effected, that is, whether the

pistol was used as a bludgeon or for shooting. It did allege a mortal wound was inflicted upon Bertha Ernestine Moten by the use of a dangerous and deadly weapon, to-wit, a revolving pistol loaded with gunpowder and leaden balls and this allegation certainly was intended to mean and did mean that the pistol was "used in the usual method, in the performance of its normal function."

In the case of State v. Dildine, 330 Mo. 756, 51 S.W.2d 1, 2(1) the court said: "Appellant asserts that the information is uncertain in violation of section 22, article 2, of the Constitution, in that it does not state the nature and cause of the accusation. The exact point is that the information does not with sufficient particularity describe how the offense was committed. It avers that the assault was made with a dangerous and deadly weapon, to wit, a pistol, which might be used in shooting or it might be used as a bludgeon, thus leaving uncertain the manner of the assault. It is urged that the pistol for the purpose of shooting is not a deadly weapon, unless it is loaded with powder and ball. In State v. Clayton, 100 Mo. 516, 13 S.W. 819, 18 Am.St.Rep. 565, an indictment exactly like the present one, with the additional averment that the pistol was loaded with gun powder and leaden balls, was held good against this attack. When an information or indictment charges that an assault with intent to kill is made with a deadly weapon, a pistol, it means that the pistol was used in the usual method, in the performance of its normal function. * * *"

■ Section 559.010 RSMo 1949, V.A.M.S., provides that: "every murder which shall be committed by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, * * * shall be deemed murder in the first degree." It is not an essential element of murder in either degree that the killing was done with a deadly weapon, or any weapon at all, since the crime may be committed with the fist. State v. Beard, 334 Mo. 909, 68 S.W.2d 698, 700(1); State

v. Rizor, 353 Mo. 368, 182 S.W.2d 525, 526; State v. Taylor, Mo.Sup., 309 S.W.2d 621, 624.

■ We find the amended information sufficient in form and substance to charge the offense of murder in the first degree and it included the offense of murder in the second degree of which offense defendant-appellant was convicted. Clearly, the amended information charges a willful, deliberate and premeditated killing. An information following the same general form was approved by this court in State v. Fletcher, Mo.Sup., 320 S.W.2d 476. And see State v. Finn, supra, 243 S.W.2d 67, 70(1). All of the essential elements of the crime of murder in the first degree are sufficiently alleged. Further, since no attack was made upon the amended information before the trial, any indefiniteness in the description of the way the crime was committed may not be considered after verdict. State v. Dildine, supra; State v. Rizor, supra. Since the amended information contained a sufficient statement of the essential elements of the offense charged, including time and place, it was sufficient to inform defendant of the charge she was called upon to defend against and to also bar any further prosecution for the same offense.

Did the court err in failing to instruct the jury on manslaughter? Under Supreme Court Rule 26.02(6) the court was required to "instruct the jury in writing upon all questions of law necessary for their guidance in returning their verdict. * * *" Appellant insists that she was entitled to an instruction on manslaughter on the basis of her own testimony. A brief review of the evidence is required. The record shows that appellant is a woman about 51 years of age and weighing 235 pounds. The deceased was a woman about 42 years of age, five feet four inches tall and weighing about 135 pounds. Eye-witnesses to the killing referred to appellant as "the heavy-set lady" and to the deceased as "the little lady." Appellant was a real estate saleslady and she owned and operat-

ed a maid service. During the last war she had been a government welfare counselor at the Remington Arms plant. For twenty-three years prior to obtaining a divorce in March, 1957, appellant had been the wife of Rev. F. W. Haynes, who was a carpenter by trade and the pastor of St. Mark's Community Baptist Church in Kansas City, Missouri. Beginning in 1954 appellant heard rumors that her husband was carrying on an improper relationship with a Mrs. Bertha Ernestine Moten, a widow woman, hereinafter referred to as the deceased, who was a member of the mentioned church and was the pianist. Appellant testified that she later verified the rumors by personal observation.

The state's evidence shows that appellant repeatedly and publicly, before and after the divorce was granted, accused the deceased of keeping company with and engaging in an improper relationship with Rev. Haynes. She many times had threatened to kill the deceased. Such threats were made personally to the deceased and to others in her absence. These threats continued up to near the time of the killing. There was also evidence that, after a divorce was granted to appellant, she and Rev. Haynes continued to be rather closely associated. He visited her in her home, sent her flowers, received gifts of food and money from her and appellant continued to be very jealous of him. Appellant testified: "Anything you love, you are jealous of, you don't want to share it with somebody else.* * * I was jealous of him and her because I knowed she was going with him. * * * That's all, he belonged to the people."

The state's evidence further tends to show that about 9:30 a. m. on Sunday morning, August 25, 1957, the deceased left her home at 1600 Paseo and started north on the east side of Paseo between 15th and 16th Streets, going in the direction of St. Mark's church. She was carrying her Bible, a writing tablet, a blue church robe and a bowl of banana pudding. Before she reached 15th Street she was seen to place

the mentioned articles down by the edge of the sidewalk and turn back south. At the same time, a "heavy-set lady" (appellant) was seen approaching from the north and she came up behind "the little lady." As the two women ran south, with the deceased twenty-five feet ahead, the deceased grabbed a man on the sidewalk, held on to him, apparently trying to use him as a shield, and she said to him that the other woman had a gun. Appellant told the man she didn't want to hurt him. When appellant fired at the deceased, the man broke away and ran. He looked back to see appellant walk up to the deceased, facing her, and shoot from a distance of two feet. Deceased fell near the sidewalk. Some three shots were fired, apparently one while both women were running south, one while the man was trying to get loose from the deceased and the last while the two women were facing each other. Appellant then went to her automobile, which was parked on the south side of 15th Street, and drove away. When arrested, she still had the gun in her possession. It contained three empty shells. The deceased's body was found some 100 feet south from where her neatly folded robe and the other articles had been placed by the sidewalk. The contents of the bowl had not been disturbed.

Appellant, in her own behalf, testified that, on the morning of August 25, 1957, she started to Sunday School at St. Stephen's Baptist Church, 1414 Truman Road. She parked her car on the east side of Paseo (where 16th would ordinarily come through), locked it up and turned to walk across the grass to the sidewalk. At that time she met the deceased, face to face. Deceased had some things in her hands, which she set down and opened her purse. Deceased pulled out a gun, pointed it at appellant and snapped it twice. The gun did not fire and, as deceased looked down at the gun, the appellant struck at the gun with a large purse she was carrying and knocked the gun from deceased's hand. The gun fell to one side and to the south. Appellant testified: "I immediately went

for the gun and when I got the gun, when I reached my hand on the gun and raised the gun up, this woman, Mrs. Moten, was so—coming towards me, I don't know, I was so confused, I don't know what happened, but I know she was coming up towards me, and that was that. * * * I pulled the trigger of the gun. I wasn't going to let her take it away from me."

Appellant further testified that at the time of the shooting she didn't talk to anyone else, didn't threaten anyone and didn't see anyone other than the deceased. She said that she had not parked her car at the particular location with any intention of shooting the deceased; that she had no intention of murdering the deceased; and that, when she fired the shot, it was not her intention to murder the deceased. She admitted that she did pull the trigger on the gun that killed the deceased and said she assumed the gun exhibited to her was the gun she had used. Appellant further said that she had parked her car north of where the shooting took place; that, at that time, she knew where the deceased lived and knew of its location with reference to St. Mark's church; that she also knew it was about the time "church took up" at St. Mark's; that, when she locked her car and looked around, the deceased was on the sidewalk looking at her. Each continued to look at the other as the deceased put some things down by the sidewalk; that, when the deceased pulled the pistol from her purse, pointed it at appellant and clicked it twice, she (appellant) couldn't move back because the car was there; and that when she knocked the gun south from the deceased's hand, she (appellant) went to get the gun. Appellant testified: "I certainly moved fast to get it (the gun) because she (deceased) didn't move, she went that-a-way and I went to the gun, she went forward. * * * We were both going south. * * * I told you when I got the gun and picked the gun up, it happened like this, she was coming towards me. * * * She had turned around, facing me. * * * I said when

I picked the gun up, she was facing me." Appellant also said that the deceased was facing her when she pulled the trigger. "I know she was coming towards me and I couldn't tell you how far she was. * * * I tell you when I picked it up she was coming towards me." Appellant only remembered pulling the trigger once.

Appellant did not request the court to give an instruction on manslaughter and no such instruction was given. However, if substantial evidence was adduced at the trial tending to show "lawful provocation," the appellant was entitled to have the jury instructed on manslaughter, regardless of whether she made a request for such an instruction. Supreme Court Rule No. 26.02(6); State v. Burrell, 298 Mo. 672, 252 S.W. 709, 711. As stated, appellant relies upon her own testimony to support the giving of such an instruction. This she may do if it is sufficient. See State v. Taylor, supra, 309 S.W.2d 621, 624. It is apparent, however, that appellant's testimony fails to show that the deceased inflicted any physical violence upon the person of appellant. There was no personal contact. The deceased at no time struck appellant. The fact that the deceased may have extracted a gun from her purse and pointed it at appellant and pulled the trigger twice, causing the gun to click, but not to fire, was insufficient to support the giving of an instruction on manslaughter. State v. Creighton, 330 Mo. 1176, 52 S.W.2d 556, 562; State v. Parker, 358 Mo. 262, 214 S.W.2d 25, 27(5); State v. Bongard, 330 Mo. 805, 51 S.W.2d 84, 89.

The essence of appellant's position is that there should be no "real distinction between a homicide provoked by a slight push or a mere touching, sufficient to constitute a simple battery, and a homicide provoked by the firing or attempted firing of a gun by an armed aggressor at close range at an unarmed defenseless person." Appellant insists that, under the facts of this case, the attempt by the deceased to fire the gun at appellant should constitute adequate provocation sufficient to reduce the homicide from second degree murder to manslaughter and to require the giving of an instruction on manslaughter. Appellant argues for the reinstatement of the rule evidenced by the holding in State v. Garrison, 147 Mo. 548, 49 S.W. 508, 511, where the throwing of a hatchet at defendant (which did not strike him) was held sufficient to require the giving of an instruction on manslaughter. The holding in the Garrison case has been overruled by the holding in State v. Biswell, 352 Mo. 698, 179 S.W.2d 61, 65, and other cases. See State v. Ferguson, 353 Mo. 46, 182 S.W.2d 38, 40. We have carefully reviewed the many cases cited by appellant in her brief in support of her contention that the attempted firing of the gun by deceased at close range and while pointed at appellant should be considered an act of personal violence requiring the giving of a manslaughter instruction. The authorities cited do not support appellant's contention.

In determining what constitutes "lawful provocation" reducing the degree of homicide from murder to manslaughter this court has consistently required evidence of physical violence to the person, that is, a battery. This court in State v. Taylor supra, 309 S.W.2d 621, 624, said: "Defendant-appellant further contends the trial court erred in failing to give an instruction on manslaughter; and it is true that, if there was substantial evidence tending to show lawful provocation, defendant was entitled to such an instruction whether or not he requested it. State v. Creighton, 330 Mo. 1176, 52 S.W.2d 556; State v. Porter, 357 Mo. 405, 208 S.W.2d 240; State v. Edwards, Mo.Sup., 226 S.W. 2d 592. Where there is lawful provocation, the law, out of indulgence to human frailty, will reduce the killing from the crime of murder to manslaughter. As stated, malice is an essential ingredient of murder; and, although intentional, a homicide yet may be manslaughter, if without malice, as where one kills in a transport of sudden passion aroused by lawful provocation.

But 'neither words of reproach, how grievous soever, nor indecent provoking actions or gestures, however much calculated to excite indignation or arouse the passions, are sufficient to free the party killing from the guilt of murder. To have the effect to reduce the guilt of killing to the lower grade, the provocation must consist of *personal violence.*' * * * State v. Starr, 38 Mo. 270. See also State v. Edwards, supra; and State v. Smith, Mo.Sup., 240 S.W.2d 671, and cases therein cited. Where the evidence is substantial in tending to show personal violence, that is, tending to show a battery—violence to a person—initially inflicted upon the slayer by the deceased at the time of the homicide, the general rule is that a manslaughter instruction is called for; and this is true though the evidence consists of testimony of the defendant alone. Violence to the person is the standard exacted by the law as affording the basis for the inference of that heat of passion which reduces the grade of the crime in a homicide case from murder to manslaughter. State v. Creighton, supra; State v. Littlejohn, 356 Mo. 1052, 204 S.W. 2d 750." And see State v. Ferguson, supra, 182 S.W.2d 38, 40(4); State v. Kizer, 360 Mo. 744, 230 S.W.2d 690, 691(1). There are exceptions to the above rule requiring actual violence to the person as a basis for a manslaughter instruction, as (1) where the defendant acts in defense of his property or habitation, and (2) where he comes upon one engaged in illicit sexual conduct with a near female relative of defendant, but we are not here concerned with such exception. See State v. Bongard, supra, 51 S.W.2d 84, 89.

In the case of State v. Bongard, supra, 51 S.W.2d 84, 89, in dealing with the issue of "lawful provocation," the court stated the reason for the rule requiring actual violence to the person, as follows: "It may seem illogical to say the insulting but comparatively harmless jostling of a person on the highway, or a mere tweaking of the nose, may be sufficient to constitute lawful provocation, whereas a hostile demonstration with a deadly weapon threatening imminent danger to life will not, though accompanied by vile and insulting language. But the law cannot have a rule exactly accommodating itself to the varied dispositions of people and altogether putting a premium on turbulent tendencies. A killing even in heat of passion is not justifiable. For the proper administration of justice some absolute standard of conduct is required. Trial judges must not be left to grope in the dark; nor should the law be made to depend on the views of the individual judge. Though the provocation fall short of being adequate or lawful, within the foregoing rule, it will still often be what is denominated 'just,' and reduce the homicide to second degree murder. * * * Where the defendant believes, and has reasonable ground for belief, that an impending assault imminently threatens his life or great bodily harm, he can act in self-defense and be completely exculpated, though there be no battery. Juries may be depended upon to deal with the particular facts as justice demands. It is hard to improve on the common law rule." And see State v. Smith, supra, 240 S.W.2d 671, 674.

In view of the decisions of this court, hereinbefore referred to, we must and do hold that appellant's testimony at the trial was insufficient to warrant the giving of an instruction on manslaughter. The trial court did not err in failing to instruct the jury on that issue.

■ In her brief, appellant further says that the court erred in not instructing on felonious assault. This contention is based on the theory that the amended information only charged a felonious assault. There is no contention that the evidence presented at the trial warranted the giving of such an instruction, since appellant testified that she shot and killed Mrs. Moten. See State v. Bongard, supra, 51 S.W.2d 84, 88. The assignment is not further developed and will be considered abandoned.

As required by Supreme Court Rule 28.02, we have also examined the record for errors on those points which need not be preserved in the motion for new trial and find no reversible error therein.

The judgment is affirmed.

All concur.