**STATE of Missouri, Respondent,**

**v.**

**Charlie WILLIAMS, Appellant.**

**No. 53481.**

Supreme Court of Missouri,
En Banc.

Dec. 31, 1968.

As Modified June 25, 1969.

Edwards & Robison, by Jack O. Edwards, Sikeston, for appellant.

Norman H. Anderson, Atty. Gen., Jefferson City, William O. Sawyers, Jr., Special Asst. Atty. Gen., St. Joseph, for respondent.

STOCKARD, Commissioner.

Defendant Charlie Williams was charged under the second offender , act, Section 556.280, RSMo 1959, V.A.M.S., with murder, second degree, for killing Joe Matthews. He was found guilty by a jury of manslaughter, sentenced by the court to imprisonment for two years, and he has appealed.

Defendant admits that a submissible case of murder, second degree, was established by the evidence. Over his objection the trial court gave an instruction on manslaughter. Defendant contends on this appeal that by reason of the rule announced in State v. Bongard, 330 Mo. 805, 51 S.W. 2d 84; State v. Biswell, 352 Mo. 698, 179 S.W.2d 61; State v. Haynes, Mo., 329 S.W. 2d 640, and other cases, the "evidence did not warrant a conviction of manslaughter."

Briefly stated, the facts most favorable to the action of the trial court in giving an instruction on manslaughter are as follows: Defendant entered the house of Mrs. Esque Williams at her invitation, or at least with her consent. Joe Matthews was sitting in a chair in the living room. Mrs. Williams said, apparently to Matthews, "That is him, partner. Get him," and then ran out the back door of the house. Without any further word by anyone, Matthews drew a pistol and fired one shot at defendant but missed. Defendant then drew his pistol and shot and killed Matthews.

In State v. Haynes, supra, this court held that when a person is charged with murder he is entitled to and the court is required to give an instruction on manslaughter only if there is "substantial evidence * * * tending to show 'lawful provocation,'" and that "In determining what constitutes 'lawful provocation' reducing the degree of homicide from murder to manslaughter this court has consistently required evidence of physical violence to the person, that is, a battery." It was also said in the Haynes case that "Violence to the person is the standard exacted by the law

as affording the basis for the inference of that heat of passion which reduces the grade of the crime in a homicide case from murder to manslaughter." Two exceptions to the above rule are mentioned, neither of which is here material. Cases cited include State v. Kizer, 360 Mo. 744, 230 S.W. 2d 690; State v. Edwards, Mo., 226 S.W.2d 592; State v. Littlejohn, 356 Mo. 1052, 204 S.W.2d 750; State v. Ferguson, 353 Mo. 46, 182 S.W.2d 38; State v. Biswell, 352 Mo. 698, 179 S.W.2d 61; and State v. Bongard, 330 Mo. 805, 51 S.W.2d 84. The last case quoted from and relied on State v. Starr, 38 Mo. 270. The above cases pertain to the refusal of the trial court to instruct on manslaughter, but as pointed out in State v. Haynes, supra, if there is evidence authorizing the instruction the trial court is required to give it even though not requested. Defendant's contention here, is that pursuant to the rule in the above cases, the evidence in this case did not authorize the giving of an instruction on manslaughter.

Prior to 1919, and at the time State v. Starr was written, the general statute on manslaughter, designated as manslaughter in the fourth degree, provided that "Every other killing of a human being, by the act * * * of another, *which would be manslaughter at the common law,* and which is not excusable or justifiable, or is not declared in this chapter to be manslaughter in some other degree, shall be deemed manslaughter in the fourth degree." (Emphasis added.) See Gen.Stat. of Mo. 1866, Chap. 200, § 18. The above cited cases correctly state the *common law rule* as to when a person charged with murder is entitled to an instruction on manslaughter. State v. Starr, supra, was written when the statutory definition of manslaughter adopted the common law definition as above set forth, and subsequent cases announcing the rule as set forth in State v. Haynes rely on State v. Starr or cases which follow it.

By Laws of Missouri, 1919, at p. 256, the general statute on manslaughter was changed to read as follows: "Every kill-

ing of a human being by the act, procurement or culpable negligence of another, not herein declared to be murder or excusable or justifiable homicide, shall be deemed manslaughter." This is the present statutory definition, § 559.070, RSMo 1959, V.A.M.S., and it is not the definition of manslaughter at common law.

In State v. Clark, Mo., 412 S.W.2d 493, the defendant was found guilty of murder, second degree, and on appeal challenged the instruction on manslaughter. The court quoted the definition of manslaughter in Laws of Missouri 1919, p. 256, and then quoted from State v. Gore, 292 Mo. 173, 237 S.W. 993, 997, as follows: " 'All reference to manslaughter at the common law was omitted in the act of 1919. Every killing of a human being is now manslaughter unless done deliberately, premeditatedly, or maliciously, or under circumstances found by the jury to be justifiable or excusable. This statutory definition does away with "heat of passion" as a necessary element of the crime, and such element need no longer be included in an instruction defining the facts necessary for the jury to find in order to return a verdict of guilty of manslaughter.' " See also State v. Frazier, 339 Mo. 966, 98 S.W.2d 707. In the following recent cases convictions of manslaughter have been sustained on the basis of the definition of manslaughter in § 559.070, supra, without discussion of or a finding that the evidence met the test set forth in State v. Haynes, supra. State v. Kukovich, Mo., 380 S.W.2d 324; State v. Curry, Mo., 372 S.W.2d 1; State v. Ross, Mo., 371 S.W.2d 224; State v. Richardson, Mo., 364 S.W.2d 552; State v. McNew, Mo., 353 S.W.2d 571; State v. Brookshire, Mo., 353 S.W.2d 681; State v. Payne, Mo., 342 S.W.2d 950. We note that in numerous other cases instructions on manslaughter which follow the language of § 559.070, supra, have been approved, even though they do not submit to the jury the element declared to be essential in State v. Haynes. See State v. Washington, Mo., 368 S.W.

2d 439; State v. Baxter, 344 Mo. 1034, 130 S.W.2d 584; State v. Bradford, 324 Mo. 695, 24 S.W.2d 993; State v. Gore, supra.

█ There is but one definition of manslaughter in this state, and that is contained in § 559.070, supra. There cannot properly be one standard as to the evidence required to authorize or require the giving of an instruction on manslaughter when a person is charged with murder, and a different standard as to the sufficiency of the evidence to support a conviction of manslaughter. For this reason we cannot agree that the standard announced in State v. Haynes as to the evidence required to authorize the giving of an instruction on manslaughter is correct. The proper standard is whether there is evidence to warrant a finding by a jury that defendant was guilty of manslaughter as that offense is defined by § 559.070, supra.

█ "The general rule is that a presumption of murder in the second degree arises from an intentional killing of a human being by another where a deadly weapon is used by him at a vital part of the body, absent *proof* of other facts tending to show deliberation to raise such killing to first degree murder, or to show want of premeditation and malice to reduce the killing to manslaughter, or to show that such killing was excusable or justifiable." (Emphasis added.) State v. Snow, 293 Mo. 143, 149, 238 S.W. 1069, 1071. See also State v. Goodwin, Mo., 352 S.W.2d 614, 619; State v. Eason, 322 Mo. 1239, 18 S.W.2d 71, 76; and State v. McCracken, 341 Mo. 697, 108 S.W.2d 372, 374. We emphasize that there must be *proof* of facts tending to show want of premeditation and malice to warrant an instruction on manslaughter. In this case there was such proof. From the facts supported by substantial evidence, the jury could find that when Matthews suddenly shot at defendant at close range without warning, defendant's firing back was without malice, and certainly without deliberation. Our

conclusion is that the evidence authorized an instruction on manslaughter, and that the trial court did not err in giving the instruction over defendant's objection.

The remaining point in defendant's brief is that the trial court erred in permitting the state "to put on rebuttal evidence that in no manner controverted any of the evidence presented by defense." Defendant asserts in his argument that the rebuttal testimony to which he objects was that "of a police officer as to certain bullet holes, their location, and conditions" because it gave "undue emphasis to this testimony" and was "merely repetitious."

In addition to a front door, the living room of the Williams house had two other doors, each of which led to a different bedroom. Defendant testified that he was standing in the "bedroom door" when Matthews, who was sitting in a chair in the corner of the living room, shot at him, and that he did not know where the bullet went. The testimony shows that defendant attempted to describe the location of persons and places in the Williams house by pointing to places or objects in the courtroom. Numerous references were to "this way," "there in that position," "like that," "like this" and so on. At one time the witness got out of the witness chair to point out and demonstrate positions or locations. Matthews fired a .32 caliber pistol and defendant's pistol was .22 caliber. On rebuttal the state recalled Sergeant Campbell of the Sikeston police department who had testified on direct examination that he found a hole made by a .32 caliber bullet in a facing of the door that led to the back bedroom, that the bullet had gone through the facing and made a mark on wood behind it and had fallen to the floor in the hollow area. On rebuttal, Sergeant Campbell testified to substantially the same facts, but added that the hole and the mark behind it were the same height. At the time the testimony on rebuttal was offered, the prosecuting attorney stated to the court that the purpose was to rebut the testimony

of defendant as to "where the man [Matthews] was when [he] fired." He then stated that defendant had testified that Matthews had fired his gun while "sitting in a particular position in this corner of the room," but that the rebuttal evidence would show "that particular gun and that particular bullet were only fired once and at another angle than would have been physically possible to have been fired."

Any competent testimony that tends to explain, counteract, repel or disprove evidence offered by defendant may be offered in rebuttal of the defendant's testimony or evidence. State v. Foster, 355 Mo. 577, 197 S.W.2d 313, 324. The scope of rebuttal testimony is largely within the sound discretion of the trial court, and unless the court abuses its discretion, or the defendant's rights are prejudicially affected, an appellate court will not reverse on that ground even though the rebuttal testimony may not, strictly speaking, be proper rebuttal evidence. State v. Niehoff, Mo., 395 S.W.2d 174; State v. Hayes, Mo., 391 S.W.2d 338. In this case the substance of the rebuttal evidence had previously been testified to by Sergeant Campbell when called by the state in its case in chief, except the testimony that the bullet hole and the mark behind it were of the same height. This latter testimony was clearly proper rebuttal testimony because it was not repetitious and it tended to disprove defendant's testimony. It was necessary to repeat some of the other testimony to give full meaning to the testimony pertaining to the height of the bullet hole and mark. Under all the circumstances it cannot be ruled that defendant's rights were prejudicially affected, or that the trial court abused its discretion in permitting the rebuttal testimony.

We have examined the record as required by Supreme Court Rules 28.02 and 28.08, V.A.M.R., and find it to be sufficient except as to the imposition of sentence by the trial court by reason of de-

fendant being prosecuted as a second offender. Certain records were offered and received in evidence as exhibits but they have not been filed with this court. However, we find no compliance in the record with the requirement of § 556.280, V.A.M.S., that "the court shall enter its findings" on the issue of a prior conviction, sentence and subsequent imprisonment or fine, parole or prohibition. See State v. Hill, Mo., 371 S.W.2d 278; State v. Collins, Mo., 383 S.W.2d 747; State v. Crow, Mo., 388 S.W.2d 817; State v. Duisen, Mo., 403 S.W.2d 574; State v. Garrett, Mo., 416 S.W.2d 116; State v. Hawkins, Mo., 418 S.W.2d 921. The finding by the trial court in this case was as follows: "We are going to make a finding—if we haven't already made it, we will make it now—that the State may proceed under the Habitual Criminal Act." This is not sufficient. See State v. Garrett, supra, 416 S.W.2d at p. 120. The punishment imposed by the trial court was more than the minimum authorized by § 559.140. Therefore, if defendant was entitled to have the jury determine the punishment it may have been less than that imposed by the trial court.

The judgment is reversed and the cause remanded so that the trial court may bring the defendant before it, with counsel, for further consideration of the evidence already submitted on the issue of the application of the second offender act, and of any such additional evidence as may be submitted, and thereupon to make appropriate findings as indicated herein. If the trial court finds one or more prior convictions, sentences, and imprisonment or parole therefor in accordance with § 556.280, it may render judgment and impose such sentence as it deems proper; if not, then a new trial must be ordered, for the defendant would then be entitled to have a jury determine the punishment.

It is so ordered.

PER CURIAM: The foregoing opinion by STOCKARD, C., is modified, and as modified is adopted as the opinion of the Court en Banc. All concur.